Ellis **ERDMAN,** Defendant–Appellant,

v.

Steve **WHITE,** d/b/a Life Aviation Corp., Plaintiff–Appellee.

No. 1–1079A271.

Court of Appeals of Indiana, First District.

Oct. 23, 1980.

Rehearing Denied Dec. 4, 1980.

Charles G. Reeder, Thomas N. Olvey, Johnson & Weaver, Indianapolis, for defendant-appellant.

Peyton & Giddings, Lebanon, for plaintiff-appellee.

ROBERTSON, Presiding Judge.

This appeal involves the review of two separate decisions of the trial court. The first issue concerns the decision of the trial court to allow an entry of default judgment, and the second deals with a later hearing to determine damages as a result of a defamatory statement.

We affirm.

Steven White (White) was the sole stockholder in an Indiana Corporation known as Life Aviation Corporation (Life). Life was engaged in the business of buying and selling aircraft. Life's line of credit, of which White was a personal guarantor, began at $50,000 but eventually increased to $200,-000. In December, 1977, certain of Life's assets were sold to Ellis Erdman (Erdman), and the corporate name was changed to Life Aeronautical Corporation. White agreed to remain as president in an advisory capacity, and the line of credit formerly extended to Life was extended to the renamed corporation with White and Erdman as personal guarantors. White resigned in June, 1978. The corporate name was later changed to Churchill Aeronautical of Indiana (Churchill). On October 19, 1978, Erdman, as Chairman of the Board of Churchill, wrote Mr. C. M. Smith, President of First Bank and Trust Company of Clay County (Bank) regarding the continuing association of the Bank and Churchill. Included in this letter was a statement regarding the "questionable reputation" of White.

Previously, on July 14, 1978, White filed a complaint in two counts based upon a promissory note, under which Churchill was obligated to White in the amount of $200,000 plus interest at 10% per annum from December 23, 1977, as a result of the sale of some of Life's assets to Churchill and Erdman. Churchill later defaulted on the note. The second count alleged Erdman to be individually liable as a co–maker and individual guarantor. The complaint was amended on November 21, 1978, to include an additional count for defamation of White's character as a result of the letter Erdman wrote to Mr. Smith at the Bank.

Throughout the course of the proceedings, Erdman was represented by New York counsel, not licensed to practice in Indiana. Three different firms or individual attorneys entered appearances on behalf of Erdman as local counsel, but all eventually withdrew, although local counsel was present and of record at the crucial hearing on March 2, 1979.

White filed a motion to strike and a motion for default judgment on February 13, 1979. A hearing was held on all pending motions on March 2, 1979, at which time the court ordered Erdman to answer within 10 days, granted partial summary judgment in favor of White against Churchill as to Count I of the amended complaint, and denied with leave to refile, White's motion to strike and for default judgment.

Erdman's answer was filed by his New York attorney on March 13, 1979, and that same day the court granted White's motion to strike and for default judgment on the remaining two counts of the amended complaint. A hearing on damages as to the defamation count was held on June 4, 1979.

In sum, White recovered from Churchill via the summary judgment $22,552.91 plus costs of the action. White also recovered $22,631.52 plus the costs of the action from Erdman based on his individual liability for the promissory note under Count II of the amended complaint. Finally, White was awarded $65,000 from Erdman based on the defamation cause of action alleged in Count III of the amended complaint.

Erdman has presented seven issues for our determination on appeal. As many of the issues deal with different aspects of the general issue, our discussion will focus on two considerations. First, was the entry of default judgment against Erdman as to Count II and Count III of White's amended complaint an abuse of the court's discretion. Secondly, was the communication in question defamatory, and if so, was the damage amount excessive and supported by sufficient evidence.

We first turn to the question of the default judgment. In resolving this question,

it is important to look at the sequence of events that led to the entry of the default judgment.

February 13, 1979–White files motion for default judgment and motion to strike.

February 27, 1979–F. Bradford Johnson files appearance as Erdman's local counsel.

March 2, 1979–By court order, court gives Erdman 10 days to answer; denies White's motion to strike with leave to renew if answer not filed and; denies application for default judgment. Court also grants partial summary judgment against Churchill as to Count I of White's amended complaint.

March 13, 1979–Johnson files motion to withdraw his appearance.

March 13, 1979–Erdman files answer and counterclaim by his New York attorney.

March 13, 1979–White files verified motion to strike and renew application for default judgment.

March 13, 1979–Court grants default judgment against Erdman as to Count II, and also finds in favor of White on Count III relating to defamation with a hearing to determine damages to be held at a later date.

Erdman first argues the trial court erred in finding that his answer was not filed within the time period allowed by the court. On March 2, 1979, the court gave Erdman 10 days within which to answer. The answer was filed on March 13, 1979. In support of his contention, Erdman claims that Indiana Rules of Procedure, Trial Rule 6(E) allows three days to be added to the prescribed period when service is made by mail. Since Erdman's New York counsel was advised of the court's order by mail, Erdman contends that he had until March 15, 1979, to file his answer. This claim is meritless, in that the court's order was read in open court with Erdman's local counsel present. Although Erdman's New York attorney was notified by mail, that notifica-

tion came from local counsel who was still on record as Erdman's attorney. The additional three days provided by T.R. 6(E) does not inure to Erdman's benefit as local counsel was present when the court's order was read.

Erdman next alleges the default judgment was improper because his answer was filed, (albeit *after* the court's time period had expired,) before the application of default judgment was refiled by White. In support of this position, Erdman cites *Hiatt v. Yergin*, (1972) 152 Ind.App. 497, 284 N.E.2d 834. *Hiatt, supra*, contains very broad language regarding default judgments.

A delinquent party only need be nimble enough to plead or otherwise comply with the rules within the three -day period in order to avoid the default question entirely. Yergin wisely filed a responsive pleading on May 4, the very day Hiatt filed the Application for Default Judgment. Thus the question became moot even before a hearing could be held under the three day notice requirement.

*Hiatt*, 152 Ind.App. at 509, 284 N.E.2d at 841.

This language would appear to imply that as long as some type of responsive pleading is filed within the three day period contained in Indiana Rules of Procedure, Trial Rule 55(B), a default judgment can be avoided. This language has been commented upon in two separate decisions by this panel. In *Clark County State Bank v. Bennett*, (1975) 166 Ind.App. 471, 475, 336 N.E.2d 663, 666, Judge Lybrook declared:

We are unable to approve of this holding to the extent that it may be construed to vest a delinquent party with the absolute option to *sua sponte* cure its default and proceed as a matter of right without judicial approval at any time prior to the entry of judgment by default.

Judge Lybrook responded to this issue again in *Snyder v. Tell City Clinic*, (1979) Ind.App., 391 N.E.2d 623, 626, wherein this court by way of a footnote overruled the broad language quoted above in *Hiatt* and

reiterated that "the three day notice requirement of an application for judgment by default is not to provide a delinquent party further time in which to plead and thereby entirely avoid the question of default, . . . ." We once more decline to accept the broad language of *Hiatt,* and reaffirm the position espoused by Judge Lybrook in *Clark County State Bank* and *Tell City Clinic.*

Indiana Rules of Procedure, Trial Rule 55 deals with default judgment and states in relevant part:

> (A) Entry. When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise comply with these rules and that fact is made to appear by affidavit or otherwise, the party may be defaulted.
>
> (B) Default judgment. In all cases the party entitled to a judgment by default shall apply to the court therefor . . . If the party against whom judgment by default is sought has appeared in the action, he (or, if appearing by a representative, his representative) shall be served with written notice of the application for judgment at least three [3] days prior to the hearing on such application.

■ A concise summary of the law dealing with default judgments was set forth in *Green v. Karol,* (1976) 168 Ind.App. 467, 344 N.E.2d 106. It is clear that the decision whether or not to enter a judgment by default is within the sound discretion of the trial court, and the trial court's discretion is considerable. *Green, supra.* Therefore, the trial court's decision will be reversed only upon a showing of a clear abuse of that discretion. *Green, supra; Clark County State Bank v. Bennett,* (1975) 166 Ind.App. 471, 336 N.E.2d 663. In reviewing a motion for a default judgment, the trial court must balance many factors in light of the circumstances of each case.

> On the one hand, a default judgment plays an important role in the maintenance of an orderly, efficient judicial system as a weapon for enforcing compliance with the rules of procedure and for facilitating the speedy determination of litigation. On the other hand, there is a marked judicial preference for deciding disputes on their merits and for giving parties their day in court, especially in cases involving material issues of fact, substantial amounts of money, or weighty policy determinations. *See* C. Wright & A. Miller, 10 Federal Practice and Procedure § 2681 (1973).

*Green,* 168 Ind.App. at 473, 344 N.E.2d at 110.

■ Although a default judgment is not generally favored, the defaulted party has the burden to show the trial court why a default judgment would result in an injustice and why his failure to plead should be excused. *Green, supra.*

■ From a review of the record, it is clear Erdman has not met the burden of showing an abuse of discretion. Although the events recited by Erdman in his brief "represent a desire by Erdman to be involved in the litigation before the trial court", we are not persuaded that the trial judge in any way abused his broad discretion.

At the March 2, 1979, hearing, the trial court ordered Erdman to respond to the complaint within 10 days and denied the motion to strike and motion for default judgment at that time. It is clear from the trial court's order that the Application for Default Judgment was denied because the motion to strike Erdman's purported answer was also denied. The judge, however, granted leave for the motion to strike to be refiled if an answer conforming to the requirements of Indiana Rules of Procedure, Trial Rule 11, was not filed within 10 days. The answer was not filed within the allotted time period. There was no abuse in granting the renewed application for default judgment.

The original application for default judgment was filed February 13, 1979, with the hearing date set for March 2, 1979. This clearly complies with the 3 day notice requirement of T.R. 55(B). At the hearing, the judge, in balancing the factors espoused in *Green, supra,* granted Erdman 10 more

days to respond. By failing to respond within the additional time period granted by the court, the default judgment was granted.

Erdman had more than the 3 day notice required by T.R. 55(B), and in addition, the failure to respond was wholly the responsibility of Erdman. Also, Erdman failed to meet any of the requirements of Indiana Rules of Procedure, Trial Rule 60(B), for obtaining relief from the default judgment. Notwithstanding the well presented argument of appellant's counsel, we fail to find an abuse of discretion.

We next turn to the question presented by Erdman concerning defamation. Erdman argues that the portion alleged to be defamatory is not, and that the damages awarded were not supported by sufficient evidence.

White alleged in Count III of his amended complaint, that a portion of a letter written by Erdman to Mr. C. M. Smith, President of First Bank and Trust Company of Clay County contained the defamatory language. The letter stated in part:

> Subsequent to effecting the above mentioned transaction with assumption of bank obligations the questionable reputation of Mr. White has since been clearly set forth in court records, newspaper reports, etc., and is a matter currently being litigated by a number of parties.

■ Generally, if words falsely written or uttered directly tend to the prejudice or injury of any person in his profession, trade or business, they are actionable per se. 18 I.L.E. *Libel and Slander* § 25 (West 1959). *See also* 50 Am.Jur.2d, *Libel and Slander* § 102. This general proposition was set forth by this court in 1968, wherein we declared:

> A communication is defamatory if it tends so to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him. Restatement of the Law of Torts, § 559, P. 140 (1938).

       \*    \*    \*    \*    \*    \*

> One who falsely and without a privilege to do so publishes a defamatory remark which ascribes to another conduct, characteristics or a condition incompatible with the proper conduct of his lawful business, trade, or profession, is liable to the other. *Gibson v. Kincaid*, (1966) 140 Ind.App. 186, 221 N.E.2d 834, 835.

*Hotel & Restaurant Employees and Bartenders' Union v. Zurzolo*, (1968) 142 Ind. App. 242, 253, 233 N.E.2d 784, 790.

Since we have determined that the entry of default judgment on March 13, 1979, was proper, our review of this issue is limited to the sufficiency of the evidence to support the damages awarded as a result of the damage hearing held June 4, 1979, regarding Count III of White's amended complaint.

■ The basis for determining that no question exists regarding liability due to the defamatory statement is found in Indiana Rules of Procedure, Trial Rule 8(D), which states:

> Averments in a pleading to which a responsive pleading is required, except those pertaining to amount of damages, are admitted when not denied in the responsive pleading. Averments in a pleading to which no responsive pleading is required or permitted shall be taken as denied or avoided.

Clearly, when the trial court granted White's Verified Motion to Strike and Renew Application for Default Judgment on March 13, 1979, the issues alleged by White in his amended complaint were admitted by Erdman's failure to effectively deny the allegations. 1 W. HARVEY, INDIANA PRACTICE § 8.7 at 483 (1969). The only matter left to decide concerned what damages, if any, should be awarded.

■ In a defamation action, there are generally two classes of compensatory damages. The first is general damages which are those the law presumes to be the natural, proximate, and necessary result of the publication. The second class is special damages, which are not assumed to be necessary or inevitable and must be shown by

allegation and specific proof. *See generally*, 50 Am.Jur.2d § 350.

 When reviewing a damage award of this kind, the law in Indiana is well settled, that the decision as to damages is one for the trier of fact, which will not be disturbed on appeal unless the damages appear to be grossly excessive. *Crocker v. Hadley*, (1885) 102 Ind. 416, 1 N.E. 734; *Graeter v. Hogan*, (1891) 2 Ind.App. 193, 28 N.E. 209. *Accord Peoples Bank and Trust Co. v. Stock*, (1979) Ind.App., 392 N.E.2d 505; *Snider v. Lewis*, (1971) 150 Ind.App. 30, 276 N.E.2d 160; *Dwyer v. McClean*, (1961) 133 Ind.App. 454, 175 N.E.2d 50.

From a review of the record, it is evident that there is sufficient evidence to sustain the damage award. White had been engaged in the occupation of buying and selling aircraft for 17 years, and in 1974 had been extended a line of credit at First Bank and Trust Co. of Clay County. This line of credit was initially $50,000, but eventually increased to $200,000 open line for aircraft. At one point, White had borrowed as much as $298,000. Further, White testified that the Bank had refused to continue to give him this line of credit and that he was in good credit standing at the Bank until it received Erdman's letter. White also testified as to the importance of having a large line of credit available in order to purchase airplanes that suddenly became available, and to the financial impact that the loss of the credit line had on both his personal and business finances. There is sufficient evidence to show a causal link between the letter sent by Erdman to Mr. Smith at the Bank and the subsequent failure of White to obtain a sufficient line of credit to operate his business. We do not find the damages to be grossly excessive.

Finding no error in the proceedings below, the judgment is affirmed.

Judgment affirmed.

RATLIFF and YOUNG (sitting by designation), JJ., concur.