**MIDWEST SECURITY LIFE INSURANCE COMPANY, Appellant (Defendant Below),**

v.

**Theresa A. STROUP and Patrick J. Stroup, Appellees (Plaintiffs Below).**

**No. 06S05–0006–CV–364.**

Supreme Court of Indiana.

June 13, 2000.

Alan J. Irvin, Indianapolis, Indiana, Attorney for Appellant.

Mary J. Hoeller, Indianapolis, Indiana, Attorney for Appellee.

## ON PETITION TO TRANSFER

SHEPARD, Chief Justice.

We grant transfer in this case to discuss whether common law claims for breach of contract and bad faith are preempted by the Employee Retirement Income Security Act of 1974 (ERISA). We hold that the claims in this case are preempted by ERISA and reverse the trial court.

### Factual and Procedural Background

Patrick and Theresa Stroup received a group health insurance policy from Midwest Security Life Insurance Company as a result of Patrick's employment with Ivy Homes. The policy was governed by ERISA. On January 12, 1993, Theresa sought predetermination of benefits for surgery to correct congenital problems with her jaw. Midwest approved the surgery and Theresa underwent orthognathic surgery on April 13, 1994. Complications arose from this surgery that required another procedure three weeks later.

About four months after Theresa's surgeries, in August 1994, Midwest amended its plan to exclude coverage for orthognathic surgery. After Theresa's second surgery, she experienced continuing jaw spasms and pain. Non-surgical treatment was unsuccessful and, in January 1995, Theresa requested predetermination for another surgery to her jaw. The procedure was not considered a continuation of a course of care, but was approved under Midwest's Temporomandibular Joint Dysfunction (TMJ) coverage which capped benefits at 1,000 dollars per year.

To avoid the cost of another procedure, Theresa opted for continued non-surgical treatment but, in October 1995, she awoke in considerable pain to discover that her jaw had broken. One week later, Theresa underwent bone graft surgery to repair her jaw. In January 1996, Theresa was forced to undergo another surgery because of continued pain and muscle spasms in her jaw. This surgery finally corrected the problems.

The Stroups filed suit against Midwest on June 26, 1995, for injunctive relief and damages. They amended their complaint to add claims for breach of contract and the tort of bad faith and to request both compensatory and punitive damages and a jury trial. Midwest filed a motion for summary judgment, arguing that the Stroups' claims were preempted by ERISA and moving to strike the Stroups' request for a jury trial. The trial court held that the Stroups' state law claims were not preempted by ERISA, their request for punitive damages was not preempted by ERISA, and the claims were triable to a jury. On interlocutory appeal, the Court of Appeals reversed, holding that the Stroups' state law claims were preempted by ERISA and were not preserved by the ERISA savings clause. *Midwest Sec. Life Ins. Co. v. Stroup*, 706 N.E.2d 201, 207 (Ind.Ct.App.1999). We granted the Stroups' petition for transfer.

### Standard of Review

Though the appealing party bears the burden of persuasion in an appeal involving summary judgment, we otherwise approach the question in the same way a trial court does: summary judgment is appropriate only where the evidence shows there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. *See* Ind. Trial Rule 56(C); *Shell Oil Co. v. Lovold Co.*, 705 N.E.2d 981 (Ind.1998). All facts and reasonable inferences drawn from those facts are construed in favor of the non-moving party. *Colonial Penn Ins. Co. v. Guzorek*, 690 N.E.2d 664 (Ind.1997). The review of a summary judgment motion is limited to those materials designated to the trial court. *See* T.R. 56(H); *see also Rosi v. Business Furniture Corp.*, 615 N.E.2d 431 (Ind.1993). We review decisions on summary judgment motions carefully to ensure that the parties were not improperly denied their day in court. *Estate of Shebel ex rel. Shebel v. Yaskawa Elec. Am., Inc.*, 713 N.E.2d 275 (Ind.1999). In this case, the question of whether

ERISA preempts the Stroups' state law claims is a question of law. Therefore, it is a matter that may be properly determined on a motion for summary judgment.

## Preemption under ERISA

■ The Stroups first contend that the Court of Appeals erred in determining that the breach of contract and bad faith claims are preempted by ERISA. The stated purpose of ERISA is to "protect ... participants in employee benefit plans and their beneficiaries, by requiring the disclosure and reporting to participants and beneficiaries of financial and other information with respect thereto, by establishing standards of conduct, responsibility, and obligation for fiduciaries of employee benefit plans, and by providing for appropriate remedies, sanctions, and ready access to Federal courts." *See* 29 U.S.C. § 1001(b) (1998). ERISA creates a federal statutory claim for recovery of "benefits due to [the beneficiary] under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan," Employee Retirement Income Security Act of 1974 (ERISA) § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B) (1994 & Supp. 1997). Suits under § 1132(a)(1)(B) may be brought in either federal or state court. *Id.* § 1132(e)(1).

### A. "Relates To"

ERISA provides for broad preemption of state law claims in 29 U.S.C. § 1144(a) which reads: "[e]xcept as provided in subsection (b) of this section, the provisions of this subchapter and subchapter III of this chapter shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan...." The United States Supreme Court has examined the legislative history surrounding § 1144(a) to determine that "the words 'relate to' in [114]4(a) [were used by Congress] in their broad sense." *Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 98, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983) (quoting Representative Dent that "the crowning achievement of this legislation [is] the reservation to Federal authority [of] the sole power to regulate the field of employee benefit plans").

■ The courts have focused on the "relate to" language of § 1144(a) and have held that a law "relates to" an employee benefit plan if it has a connection with[1] or a reference to such a plan. *Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 47, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987); *accord Shaw,* 463 U.S. at 96–97, 103 S.Ct. 2890; *California Div. of Labor Standards Enforcement v. Dillingham Constr., N.A., Inc.,* 519 U.S. 316, 324, 117 S.Ct. 832, 136 L.Ed.2d 791 (1997). The preemption provision may apply even to laws that are not specifically designed to affect employee benefit plans or to laws that affect the plans only indirectly. *Ingersoll–Rand Co. v. McClendon,* 498 U.S. 133, 139, 111 S.Ct. 478, 112 L.Ed.2d 474 (1990).

It appears clear that Stroups' breach of contract and bad faith claims "relate to" employee benefit plans and therefore fall under the broad preemption provisions of ERISA. These claims are based on Midwest's failure to pay benefits due under an

---

1. The Stroups contend that the *Pilot Life* test for determining if a state law "relates to" ERISA was altered by *California Div. of Labor Standards Enforcement v. Dillingham Constr., N.A., Inc.,* 519 U.S. 316, 117 S.Ct. 832, 136 L.Ed.2d 791 (1997), and cases that follow it. Specifically, they contend that the "connection with" portion of the test has been replaced by a two-part test that focuses on whether the law impacts ERISA and congressional intent. In *Dillingham,* the Court stated that "to determine whether a state law has the forbidden connection, we look both to the objectives of the ERISA statute as a guide to the scope of the state law that Congress understood would survive as well as to the nature of the effect of the state law on ERISA plans." 519 U.S. at 325, 117 S.Ct. 832 (citations omitted). The two factors the Stroups listed are used to determine whether a state law has a connection with ERISA. They do not, as the Stroups claim, displace the "connection with" alternative.

ERISA-governed pension plan. The complaint asks for damages for breach of the insurance contract and for punitive ·and compensatory damages for the tort of bad faith based on Midwest's denial of coverage under the insurance contract. The claims clearly have connection with and refer to the ERISA plan.

The essence of the claims is a failure to supply benefits under the plan. The U.S. Supreme Court addressed similar cases in *Pilot Life*, 481 U.S. 41, 107 S.Ct. 1549, 95 L.Ed.2d 39, and *Ingersoll–Rand*, 498 U.S. 133, 111 S.Ct. 478, 112 L.Ed.2d 474. In both cases, the Court held that the plaintiffs' common law claims related to ERISA and, therefore, were subsumed under its broad preemption provision. Just as in *Ingersoll–Rand*, "there simply is no cause of action if there is no plan." 498 U.S. at 140, 111 S.Ct. 478. Because the Stroups' claims "relate to" an employee benefit plan, in this case their medical insurance, the claims fall under ERISA's broad preemption powers.

### B. Savings Clause

■ The Stroups contend that even if the claims "relate to" employee benefit plans and would normally be preempted by ERISA, they are preserved by the "savings clause." The Stroups argue that the Court of Appeals analysis may be correct under precedent as it then existed, but that the recent U.S. Supreme Court opinion in *UNUM Life Ins. Co. v. Ward*, 526 U.S. 358, 119 S.Ct. 1380, 143 L.Ed.2d 462 (1999), altered the test to be used under the savings clause.

■ The clause in question, 29 U.S.C. § 1144(b)(2)(A), provides that "nothing in this subchapter shall be construed to exempt or relieve any person from any law of any State which regulates insurance, banking, or securities." This provision operates as a "savings clause" to preserve state laws if they "regulate insurance" even though the state law falls under ERISA's broad preemption provision.

■ The Supreme Court has created a two-part test to determine if a state law· that "relates to" ERISA "regulates insurance" and therefore is saved. First, because we "begin with the ordinary language employed by Congress and the assumption that the ordinary language accurately expresses the legislative purpose," the "common-sense view" of the language of the savings clause is examined. *Metropolitan Life Ins. Co. v. Massachusetts*, 471 U.S. 724, 740, 105 S.Ct. 2380, 85 L.Ed.2d 728 (1985) (quoting *Park 'N Fly, Inc. v. Dollar Park & Fly, Inc.*, 469 U.S. 189, 194, 105 S.Ct. 658, 83 L.Ed.2d 582 (1985)). Second, courts look to case law interpreting the phrase "business of insurance" under the McCarran–Ferguson Act, 15 U.S.C. § 1011, which has focused on: (1) whether the practice has the effect of transferring or spreading a policyholder's risk; (2) whether the practice is an integral part of the policy relationship between the insurer and the insured; and (3) whether the practice is limited to entities within the insurance industry. *Pilot Life*, 481 U.S. at 48–50, 107 S.Ct. 1549.

■ A state law or practice "regulate[s] insurance" under the "common-sense view" if it "is grounded in policy concerns specific to the insurance industry." *UNUM Life*, 119 S.Ct. at 1388. In *UNUM Life*, the Court held that California's notice-prejudice rule "regulates insurance" because it "is directed specifically at the insurance industry and is applicable only to insurance contracts." *Id.* at 1386. This is to be distinguished from a state law of general application that may have an impact on the insurance industry. *See Pilot Life*, 481 U.S. at 50, 107 S.Ct. 1549.

The three McCarran–Ferguson factors must also be examined. The Court held in *UNUM Life* that it was not necessary for all three criteria to be present in order to avoid preemption under ERISA. 119 S.Ct. at 1389. In that case, the Court found that the "common sense" view of

California's notice-prejudice rule was that it "regulates insurance." *Id.* The Court went on to note, however, that only two of the three McCarran–Ferguson factors were present, and that "none of these criteria is necessarily determinative in itself." *Id.*

The Stroups breach of contract and bad faith claims do not fall under a "common-sense view" of the phrase "regulates insurance," nor do they satisfy the McCarran–Ferguson factors previously examined by the U.S. Supreme Court when determining whether a state law falls under the savings clause. The breach of contract claim clearly does not turn on a law that regulates insurance. It is a claim founded on general contract principles that happens to apply to an insurance contract in this instance. There are no specific insurance industry concerns, and state breach of contract law is not directed at the insurance industry any more than it is directed at any other industry.

Indiana's tort of bad faith also does not fall under a "common-sense" understanding of "regulates insurance." The tort was established in *Erie Ins. Co. v. Hickman,* 622 N.E.2d 515, 519 (Ind.1993). We applied general tort theories to determine that a breach of the duty of good faith may be an independent tort compensable with punitive damages.

Likewise, the Stroups' claims do not satisfy the McCarran–Ferguson factors that determine if a practice falls under the "business of insurance." The first factor, whether the state law or rule at issue "has the effect of transferring or spreading a policyholder's risk," is not applicable to either the breach of contract claim or the tort of bad faith. *See Pilot Life,* 481 U.S. at 50, 107 S.Ct. 1549. The Stroups contend that Indiana's tort of bad faith spreads the insurance risk because insurers in Indiana that are not shielded from liability by ERISA will undoubtedly spread the risk as they raise premiums to cover bad faith claims. This alleged connection between the tort of bad faith and

spreading policyholder's risk is too attenuated to satisfy this criterion. It would apply to any claim against an insurance company. Furthermore, the Stroups' argument "does not alter the allocation of risk for which the parties initially contracted" as required under this factor. *UNUM Life,* 119 S.Ct. at 1389 (citations omitted).

The second factor, whether the breach of contract or tort of bad faith serves as "an integral part of the policy relationship between the insurer and the insured" is also unsatisfied. The Stroups' breach of contract claim does not establish the contract terms and is merely a remedy when one party does not honor the terms of the contract. The tort of bad faith is also not integral to the relationship between the insurer and insured. It serves the same function as any other general contract or tort law. As in *Pilot Life,* that tort "does not define the terms of the relationship," 481 U.S. at 51, 107 S.Ct. 1549, but merely allows for punitive damages in the event of breach of the insurance contract in bad faith. This is not a case where the state law "changes the bargain between the insurer and insured" by adding a mandatory contract term as the California notice-prejudice rule did in *UNUM.* 119 S.Ct. at 1389.

Finally, the third factor is whether the practice is limited to the insurance industry. We need not resolve that because, even if it were so limited, we conclude, like the Court of Appeals, that the three factors taken together do not render Indiana's tort of bad faith a state law "regulating insurance."

Because the breach of contract and tort of bad faith claims satisfy neither the "common-sense view" of "regulates insurance" nor the McCarran–Ferguson factors, they are not saved under ERISA, and are preempted.

Because we agree with the Court of Appeals that the Stroups' state law claims are preempted by ERISA, we do not need to address whether a jury trial would be

allowed for either the state law claims or for claims under ERISA.

### Conclusion

The judgment of the trial court is reversed and remanded with instructions to grant Midwest's motion for summary judgment on ERISA preemption.

DICKSON, SULLIVAN, BOEHM, and RUCKER, JJ., concur.

BOEHM, J., concurs with separate opinion in which DICKSON, J., joins.

BOEHM, Justice, concurring.

I concur in the majority's resolution of the ERISA preemption issue. I write separately because the case may or may not be over, and the Court of Appeals expressed views with which I disagree as to the right to a jury trial in the courts of this state under Article I, Section 20 of the Indiana Constitution.

As the majority opinion observed, ERISA creates a federal statutory claim for recovery of "benefits due to [the beneficiary] under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." Employee Retirement Income Security Act of 1974 (ERISA) § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B) (1994 & Supp. III 1997). The Court of Appeals noted that, unlike most claims created by ERISA, an ERISA claim under § 502(a)(1)(B) may be asserted in a state court, but held that even if the Stroups asserted such a claim under ERISA, they would not be entitled to a jury trial. *See Midwest Sec. Life Ins. Co. v. Stroup*, 706 N.E.2d 201, 207–08 (Ind. Ct.App.1999). Article I, Section 20 of the Indiana Constitution provides that "[i]n all civil cases, the right of trial by jury shall remain inviolate." The Court of Appeals took the view that this constitutional provision preserved a jury right only in those civil cases triable by jury at common law, and reasoned that because ERISA did not exist at common law, there is no right to a jury trial in an Indiana state court for an ERISA claim. I believe this is an unduly restrictive view of Article I, Section 20.

Both Article I, Section 20 and Indiana Trial Rule 38(A) provide for the right of a trial by jury in certain instances. The right to a jury trial is a "fundamental right in our democratic judicial system" that must be "scrupulously guarded" against encroachment. *Levinson v. Citizens Nat'l Bank*, 644 N.E.2d 1264, 1267 (Ind.Ct.App. 1994). In my view, the crucial inquiry, however, is not, as the Court of Appeals put it, whether a cause of action existed at common law. Rather, it is whether the cause of action is essentially legal or equitable, as those terms were used in 1852. *See Midwest Fertilizer Co. v. Ag–Chem Equip. Co.*, 510 N.E.2d 232, 233 (Ind.Ct. App.1987) ("[T]he key determination to be made is whether the claim involved is legal or equitable in character."). If an action is essentially legal in nature, a jury demand must be honored, but those causes of action that are equitable may be tried to the court. This formulation can be found in several Indiana decisions, both recent and ancient. *See, e.g., Fager v. Hundt*, 610 N.E.2d 246, 253 n. 9 (Ind.1993); *Dean v. State ex rel. Bd. of Med. Registration & Examination*, 233 Ind. 25, 31–32, 116 N.E.2d 503, 507 (1954); *Fish v. Prudential Ins. Co.*, 225 Ind. 448, 452–53, 75 N.E.2d 57, 59 (1947); *Martin v. Martin*, 118 Ind. 227, 237, 20 N.E. 763, 767–68 (1889).

If the cause of action existed on June 18, 1852, then this issue is decided by history. Legal actions at that time included replevin, ejectment, fraudulent conveyances, and actions for money damages, *see City of Terre Haute v. Deckard*, 243 Ind. 289, 293, 183 N.E.2d 815, 817 (1962); *Howell v. State Farm Fire & Cas. Co.*, 530 N.E.2d 318, 319–20 (Ind.Ct.App.1988), while equitable actions included injunctions, reformations, derivative actions, accounting, discovery, and land transactions, *see Dean*, 233 Ind. at 31–32, 116 N.E.2d at 507; *Sikich v. Springmann*, 221 Ind. 483, 487–88, 48 N.E.2d 808, 809–10 (1943); *Lewandow-*

*ski v. Beverly,* 420 N.E.2d 1278, 1282 (Ind. Ct.App.1981).

If, however, the cause of action is one that was not in existence in 1852, it is necessary to determine whether it is closer to a claim at law or one in equity. "To determine whether or not a party is entitled to a trial by jury, we look beyond the label given a particular action and evaluate the nature of the underlying substantive claim." *Hacienda Mexican Restaurant v. Hacienda Franchise Group, Inc.,* 641 N.E.2d 1036, 1041 (Ind.Ct.App.1994). This involves evaluating "the complaint, the rights and interest[s] involved, and the relief demanded." *Levinson,* 644 N.E.2d at 1267.

Under the Court of Appeals' approach in this case, parties filing suit under any statutory scheme that has been developed since 1852 would not be entitled to a jury trial because the cause of action did not exist at common law. Presumably, the same reasoning would deny a jury trial for claims under common law theories—for example, invasion of privacy—that did not exist 150 years ago. No case seems to suggest that result, and for good reason.

Indiana statutes have created a number of causes of action. Some of these are very much in the nature of tort suits for damages that are, in my view, triable to a jury as a matter of constitutional right. For example, the Indiana legislature has created causes of action for deceptive business practices in the cigarette industry, the unauthorized use of a watercraft as a plug to make a mold to duplicate the watercraft, and strict liability for defects in products. *See* Ind.Code §§ 24–3–2–1 to – 13 (1998); §§ 24–4–8–1 to –7 (1998); §§ 34–20–1–1 to 34–20–9–1 (1998). On the other hand, some are arguably more analogous to traditionally equitable claims. For example, in *Arnold v. Dirrim,* 398 N.E.2d 426, 438–39 (Ind.Ct.App.1979), a jury demand for a claim under the Indiana Securities Act was held properly refused not because the statutory claim did not exist in 1852, but because it was viewed as essentially a claim for rescission, which was a claim in equity. Finally, in some instances the statute creating a new cause of action will also purport to establish the right to a jury trial. Whether or not this is a mandate the courts are required to honor, courts generally have granted a jury trial if it is provided by the statute creating a cause of action. *See Deig v. Morehead,* 110 Ind. 451, 454–55, 11 N.E. 458, 459–60 (1887) (statute governing will contests allows for jury trials); *Lake Erie, Wabash & St. Louis R.R. Co. v. Heath,* 9 Ind. 558, 561 (1857) ("We may observe that the legislature may prescribe the trial by jury in cases where the constitution does not give it as a right; but they cannot withhold it in cases where it is so given.").

There is a split of authority on whether an ERISA claim is equitable or legal in nature. Midwest cites several federal cases holding that ERISA claims are not entitled to a jury trial. *See Blake v. Unionmutual Stock Life Ins. Co.,* 906 F.2d 1525, 1526 (11th Cir.1990); *Wardle v. Central States, Southeast & Southwest Areas Pension Fund,* 627 F.2d 820, 829 (7th Cir. 1980), *abrogation on other grounds recognized by Casey v. Uddeholm Corp.,* 32 F.3d 1094, 1099 n. 4 (7th Cir.1994); *Allison v. Dugan,* 737 F.Supp. 1043, 1047 (N.D.Ind.1990), *rev'd in part on other grounds,* 951 F.2d 828 (7th Cir.1992). Many of the federal cases discussing the right to a jury trial in ERISA claims seem to stem from *Wardle,* which analyzed the issue in terms of the legal or equitable nature of the claims. In that case the suit was for benefits under a pension plan. Under trust law, a beneficiary's suit against the trustee is viewed as an action at law only if it is for an amount due "immediately and unconditionally." *Restatement (Second) of Trusts* § 198 (1959). Otherwise, it is in the nature of an equitable claim. The court in *Wardle* found the claim to be analogous to a claim for benefits under a trust. *See* 627 F.2d at 829. Whether this reasoning applies to all ERISA § 502(a)(1)(B) claims seems debat-

able. At any rate, some state courts have concluded that ERISA claims require a jury trial because they are similar to suits for breach of contract or are for legal remedies. *See Head v. Central Reserve Life,* 256 Mont. 188, 845 P.2d 735, 741 (1993); *Fuller v. INA Life Ins. Co.,* 141 Misc.2d 464, 533 N.Y.S.2d 215, 218 (1988); *Shaw v. Atlantic Coast Life Ins. Co.,* 322 S.C. 139, 470 S.E.2d 382, 387 (App.1996); *see also Ex parte Metropolitan Life Ins. Co.,* 679 So.2d 686, 689 (Ala.1996) (concurring opinion). There also appears to be at least some federal authority to that effect. *See, e.g., Vicinanzo v. Brunschwig & Fils, Inc.,* 739 F.Supp. 882, 885–91 (S.D.N.Y. 1990) (action for medical and life insurance benefits is essentially contractual and legal in nature requiring a jury trial).

State law, including the state constitution and trial rules, governs whether a right to a jury trial exists in a suit brought in state court even if the cause of action arises under federal law. *See Brown v. Gerdes,* 321 U.S. 178, 189–90, 64 S.Ct. 487, 88 L.Ed. 659 (1944) (Frankfurter, J ., concurring); *Louisville & Nashville R.R. Co. v. Stewart,* 241 U.S. 261, 263, 36 S.Ct. 586, 60 L.Ed. 989 (1916); *Hiatt v. Yergin,* 152 Ind.App. 497, 520–27, 284 N.E.2d 834, 847–50 (1972), *overruled on other grounds by Erdman v. White,* 411 N.E.2d 653, 656–57 (Ind.Ct.App.1980).[2] Indiana constitutional jury trial jurisprudence diverges from the Seventh Amendment in a number of respects. *See, e.g., Hiatt,* 152 Ind.App. at 520–27, 284 N.E.2d at 847–50 (rejecting *Dairy Queen, Inc. v. Wood,* 369 U.S. 469, 82 S.Ct. 894, 8 L.Ed.2d 44 (1962), and *Beacon Theatres, Inc. v. Westover,* 359 U.S. 500, 79 S.Ct. 948, 3 L.Ed.2d 988 (1959)). Thus, even if federal authorities correctly deny a jury trial in federal court for any claim under ERISA § 502(a)(1)(B), the question remains whether a claim in an Indiana court is legal or equitable in na-

ture, and that issue is dispositive of the jury trial right in a state court.

In my view, the state law tort and contract claims the Stroups sought to assert would have been legal in nature as claims for money damages. It is unclear what, if any, ERISA claims the Stroups will bring and what relief they may seek. If and when the Stroups are permitted to amend their complaint to add ERISA claims, whether these claims will support a jury demand is better resolved by the trial court. In the meantime, I write separately because I do not agree with the Court of Appeals as to the right to a jury trial under·the Indiana Constitution.

DICKSON, J., concurs.

2. This may not be true if the right to a jury trial is "part and parcel of the remedy afforded" under the federal legislation. *Dice v. Akron, Canton & Youngstown R.R. Co.,* 342 U.S. 359, 363, 72 S.Ct. 312, 96 L.Ed. 398

(1952) (citations omitted) ("[T]he right to trial by jury is too substantial a part of the rights accorded by the [Federal Employers' Liability] Act to permit it to be classified as a mere 'local rule of procedure.' ").