



FILED
Apr 16 2025, 9:01 am
CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

IN THE

# Court of Appeals of Indiana

Regina Geels,

*Appellant-Defendant/Counter-Claimant*

v.

Lindsay Flottemesch, Mackenzie Hatfield, and Stephanie Malinowski, as Guardian for Marley Malinowski,

*Appellees-Plaintiffs/Counter-Claim Defendants*

---

April 16, 2025

Court of Appeals Case No.
24A-PL-2911

Appeal from the Allen Superior Court

The Honorable David J. Avery, Judge

Trial Court Cause No.
02D09-2107-PL-284

---

**Opinion by Judge Tavitas**
Chief Judge Altice and Judge Brown concur.

**Tavitas, Judge.**

## Case Summary

[1] Regina Geels is the designated beneficiary of her deceased brother's two life insurance policies. Upon the request of the brother's daughters ("Daughters"), the trial court imposed a constructive trust over the proceeds of the policies in favor of Daughters. Geels appeals and claims: (1) state law remedies, such as a constructive trust, are preempted by the Employment Retirement Security Act ("ERISA"), which governs the policies; and (2) the trial court's imposition of a constructive trust was clearly erroneous. Daughters argue that Geels' ERISA argument is precluded by the law-of-the-case doctrine. We conclude that the law-of-the-case doctrine is inapplicable and that ERISA preemption applies. Accordingly, we reverse and remand.

## Issue

[2] Geels presents two issues, one of which we find dispositive and restate as whether ERISA preempts imposing a constructive trust over the proceeds of the life insurance policies at issue here.

## Facts and Procedural History[1]

### A. Facts

David Malinowski died on June 14, 2021, and was survived by his daughters, thirty-six-year-old Lindsay Flottemesch, thirty-three-year-old Mackenzi Hatfield, and nine-year-old Marley Malinowski (collectively "Daughters"), and his sister, Geels. David was not married at the time of his death. In June 2018, David was experiencing financial difficulties and approached Geels asking her for assistance in hiring an attorney to help with child custody issues between him and his ex-wife, Stephanie Malinowski, regarding Marley.[2] Around that same time, David told Geels that David needed to "change his . . . beneficiaries because Stephanie was the beneficiary of everything." Tr. Vol. II p. 119.

On June 19, 2018, David executed his Last Will and Testament ("Will"). On that same date, he also executed a durable power of attorney appointing Geels as his attorney-in-fact and granting Geels broad powers. At all relevant times prior to his death, David was employed with CRST International, Inc. As part of his benefits, David was the recipient of two life insurance policies issued by Metropolitan Life Insurance Company ("MetLife") with a combined benefit value of $150,000.

---

[1] The facts and procedural history of this case are taken primarily from the trial court's order and judgment, as both parties state in their briefs that they agree with the court's findings.

[2] Marley's mother, Stephanie Malinowski, participates in this case as guardian for Marley, who died on January 15, 2024.

[5] On June 28, 2018, David's daughter Mackenzi sent a text to Geels informing her that David told Mackenzi he had instructed Geels, upon his death, to split his life insurance three ways and to place Marley's share in trust until she was twenty-one years old. Beginning in July 2018, Geels and her husband began paying David's medical bills, rent, child support, and utility bills. In short, it appeared Geels began "acting as a de facto guardian" over David's financial affairs. Appellant's App. Vol. II p. 27. In January 2020, David was admitted to the hospital. He executed a form appointing Geels as his health care representative. Geels and David also became joint owners of a bank account to allow Geels to perform transactions while David was hospitalized.

[6] Upon his release from the hospital, David lived with Geels and her husband from August to early September 2020. Thereafter, David moved in with his daughter Lindsay for approximately a month, and then he lived with his friends Nathan and Katherine Jensen until around December 2020 when he moved into an apartment. On January 1, 2021, David designated Geels as the sole primary beneficiary of his two MetLife insurance policies. David died in his apartment on June 14, 2021. His cause of death was determined to be congestive heart failure. On June 29, 2021, Geels submitted a claim to MetLife for the life insurance proceeds. Three days later, David's daughter, Lindsay, contacted MetLife and informed it that "there was litigation as to the life insurance policies[.]" *Id*. at 30.

## B. Procedural History

On July 9, 2021, Daughters filed a petition to construe the Will and to impose a constructive trust over the proceeds of David's life insurance policies. They named Geels and MetLife as defendants. Among other things, the petition alleged that, despite Geels being named as the beneficiary of the two life insurance policies, the proceeds should be held in constructive trust for the benefit of Daughters because it was David's intent that Daughters receive the proceeds. The petition also alleged that the designation of Geels as beneficiary was the result of undue influence or fraud. Geels filed an answer to the petition and a counterclaim against Daughters for defamation.

MetLife also filed an answer to the petition in which it asserted: (1) David was enrolled in two employer-sponsored life insurance plans totaling $150,000; (2) MetLife must administer claims in accordance with ERISA; and (3) Geels was named as the sole primary beneficiary of both policies and had submitted a claim to collect the proceeds. MetLife raised multiple affirmative defenses, including that Daughters' "claims against MetLife, if any, arise under 29 U.S.C. § 1132(a)(1)(B), of ERISA. To the extent the complaint makes claims or seeks remedies not provided for under ERISA, those claims and remedies are pre-empted by ERISA and must be stricken." *Id*. at 96.

On November 9, 2021, all parties filed an agreed motion for interpleader, which stated in relevant part:

> 7. The Decedent was an employee of CRST International, Inc. ("CRST") and a participant in the employee welfare benefit plan

sponsored by CRST (the "Plan"), governed by the Employee Retirement Security Act of 1974, as amended ("ERISA"), 29 U.S.C. § 1001, *et. seq.*

8. The Plan was funded, at least in part, by a group life insurance policy # [ ] (the "Policy") issued by MetLife to CRST. A true and correct copy of the Plan documents are attached hereto as Exhibit A[.]

9. MetLife, as claim fiduciary, must administer claims in accordance with ERISA and the documents and instruments governing the Plan. 29 U.S.C. § 1104(a)(1)(D).

10. ERISA defines a beneficiary as "[a] person designated by a participant, or by the terms of an employee benefit plan, who is or may become entitled to a benefit thereunder." 29 U.S.C. § 1002(8).

11. The Plan establishes the right of a Plan participant to name his or her beneficiary. . . .

12. A claim was submitted by [Geels] for the basic life and supplemental benefits under the plan based on [Geels] being the designated sole primary beneficiary.

13. At or about the same time, Lindsay reported that a lawsuit had been or would be filed to challenge the designation of [Geels] as sole primary beneficiary.

14. At the time of his death, the Decedent was enrolled under the Plan for basic life insurance coverage in the amount [of] $50,000.00 and supplemental life in the amount of $100,000.00, for a total benefit at issue in the amount of ONE HUNDRED FIFTY THOUSAND and 00/100 Dollars ($150,000.00) (the "Plan Benefits"). The Plan Benefits became payable upon the Decedent's death, pursuant to the terms of the Plan.

15. Based on the pending lawsuit filed by [Daughters] in which they challenge the claim for the Plan Benefits being paid to [Geels], MetLife cannot determine whether this Court will find valid the beneficiary designation naming [Geels] as sole primary beneficiary, which would result in the Plan Benefits being payable to [Geels], or whether instead this Court will find invalid the beneficiary designation which would result in the Plan benefits being payable potentially to the Estate or other beneficiaries designated in accordance with the terms of the Plan.

* * * * *

21. [All parties have agreed] that MetLife should be allowed to deposit with the Clerk of the Court the Plan Benefits plus any applicable interest due and owing under the terms of the Plan, and MetLife should be dismissed from the action, and the Court should determine the disbursement of the Plan Benefits.

*Id*. at 105-06. The trial court granted the agreed motion, and MetLife subsequently deposited the policy proceeds with the clerk of the court and moved to dismiss itself as a defendant. The trial court then granted the motion and dismissed MetLife as a defendant.

[10] After a failed mediation, the case proceeded to a bench trial that commenced on February 14, 2023. Daughters sought to prove that Geels' designation as the beneficiary of David's life insurance policies was the result of undue influence or fraud and/or that Geels herself, and not David, was the one who designated herself as the beneficiary of the policies. On June 21, 2023, the trial court *sua sponte* ordered the parties to participate in a judicial settlement conference, but the case was not resolved at the settlement conference.

On August 29, 2023, the trial court issued its findings of fact, conclusions thereon, and judgment. The court concluded that the "life insurance proceeds in the amount of $150,000.00 are subject to a constructive trust on behalf" of Daughters. *Id*. at 50. The trial court imposed the constructive trust despite specifically finding that Geels' designation as the beneficiary of the life insurance policies was **not** the result of undue influence or fraud, that David was competent to designate Geels as the beneficiary, and that Daughters failed to prove that Geels designated herself as the beneficiary. Rather, the trial court based the constructive trust on its determination that David "named [Geels] the beneficiary of the life insurance policies with the instruction that [Geels] was to distribute the proceeds to his daughters." *Id*. at 52. Accordingly, the trial court ordered that the insurance proceeds were subject to a constructive trust and that each Daughter was "entitled to one-third of the amount being held by the Clerk of Allen County consisting of the proceeds of the MetLife life insurance policies[.]" *Id*. at 50.[3]

## C. The First Appeal and Remand

Geels appealed and presented two arguments: (1) the equitable, state-law remedy of a constructive trust was preempted by ERISA; and (2) the trial court's findings did not support imposing a constructive trust. As part of her second argument, Geels claimed that the trial court applied the wrong burden

---

[3] The court entered judgment in favor of Daughters as to Geels' counterclaim for defamation, and Geels does not challenge this portion of the trial court's judgment on appeal.

of proof when imposing the constructive trust, i.e., a preponderance of the evidence instead of clear and convincing evidence. A panel of this Court found the first issue to be dispositive and held that the policies were governed by ERISA and, therefore, not subject to a constructive trust. *Geels v. Flottemesch*, 237 N.E.3d 674, 682 (Ind. Ct. App. 2024), *trans. granted, opinion vacated*.[4]

[13] Our Supreme Court granted transfer, thereby vacating this Court's opinion. In a *per curiam* opinion, our Supreme Court did not address the ERISA preemption issue and held that the trial court applied the incorrect preponderance-of-the-evidence standard regarding the imposition of a constructive trust. The Court reversed and remanded so that the trial court could apply the clear-and-convincing standard. *Geels v. Flottemesch*, 243 N.E.3d 1069, 1071 (Ind. 2024).

[14] On remand, the trial court issued an order providing:

> The Trial Court regrets using the careless language in its Order of Judgment, to-wit: "[t]he evidence supports a finding that it is more likely than not that the Deceased named [Geels] as the beneficiary of the life insurance policies with the instruction that [Geels] was to distribute the proceeds to his daughters." The Trial Court should have been more careful with its language especially considering that the standard of proof to be applied was the clear-and-convincing standard and not the "greater weight of the evidence" standard.
>
> The Trial Court has closely reviewed its Order of Judgment dated August 29, 2023. The only change that the Trial Court would

---

[4] Judge Foley dissented, believing that Geels waived the ERISA preemption issue but that the trial court erred by applying a preponderance-of-the-evidence standard instead of the clear-and-convincing standard. *Id.* at 683-85 (Foley, J., dissenting).

make to the Order is to state: the clear and convincing evidence demonstrates that [Geels] was designated as the beneficiary of the Deceased's life insurance policies for the purpose of distributing the proceeds to his daughters. In all other respects, the Trial Court stands by its Order of Judgment and the Trial Court incorporates and reinstates its Order of Judgment dated August 29, 2023 into this Order subject to the foregoing change.

Appealed Order p. 2. The trial court did not address the ERISA preemption argument on remand. Geels again appeals.

## Discussion and Decision

[15] The parties agree that the life insurance policies at issue here are governed by ERISA. Geels argues that state law remedies, including the equitable remedy of a constructive trust, are preempted by ERISA.

### A. Standard of Review

[16] The trial court here issued *sua sponte* findings of fact and conclusions thereon. Because neither party filed a written request for findings of fact and conclusions thereon, the trial court's findings of fact are controlling only as to issues they cover. *In re Adoption of I.B.*, 32 N.E.3d 1164, 1169 (Ind. 2015). "We limit our review of those matters to whether the evidence supports the findings and then whether the findings support the judgment, reversing the findings only if they are clearly erroneous." *Id.* "On all other matters, the general-judgment standard applies, and we will affirm on any legal theory supported by the evidence." *Id.* We review the trial court's conclusions of law de novo. *Id.*

## B. The Law-of-the-case doctrine does not preclude Geels' ERISA argument.

We first address Daughters' claims that Geels' ERISA arguments are precluded by the law-of-the-case doctrine. As we explained in *Zartman v. Zartman*:

> The "law of the case doctrine" is a discretionary tool by which appellate courts decline to revisit legal issues already determined on appeal in the same case and on substantially the same facts. Under that doctrine, the decision of an appellate court becomes the law of the case and governs the case throughout all of its subsequent stages, as to all questions which were presented and decided, both directly and indirectly. However, to invoke the law of the case doctrine, "the matters decided in the prior appeal must clearly appear to be the only possible construction of the opinion."

168 N.E.3d 770, 778-79 (Ind. Ct. App. 2021) (quoting *Maciaszek v. State*, 113 N.E.3d 788, 791 (Ind. Ct. App. 2018)).

Daughters argue that "the only possible construction of the Supreme Court's decision in *Geels v. Flottemesch*, 243 N.E.3d 1069, 1071 (Ind. 2024), is that the Supreme Court rejected the preemption argument, whether because of [Geels]'s waiver of it at the Trial Court or otherwise." Appellee's Br. p. 11. We disagree.

Although Geels' ERISA argument was thoroughly discussed in this Court's first opinion in *Geels*, that opinion was vacated. Our Supreme Court's *per curiam* opinion in *Geels* did not mention ERISA, much less reject Geels' ERISA preemption argument. Instead, the Court simply reversed based on one of the other issues—the trial court's application of the improper burden of proof. By

giving the trial court a chance to apply the correct burden of proof, the Court did not make any statement about ERISA. A *sub silentio* rejection of Geels' ERISA preemption argument is not the only possible construction of our Supreme Court's opinion. Accordingly, the law-of-the-case doctrine does not bar Geels from presenting her ERISA preemption argument.

## C. Geels did not waive the argument of ERISA preemption.[5]

[20] Daughters also argue that Geels has waived the issue of ERISA preemption on appeal by failing to raise it as an affirmative defense. This Court has held that where an ERISA preemption claim involves the choice of law or type of relief which can be granted, the preemption issue is a matter of defense. *Assocs. Inv. Co. v. Claeys*, 533 N.E.2d 1248, 1254 (Ind. Ct. App. 1989), *trans. denied*. "To properly preserve an affirmative defense the party with the burden of proving it must have set it forth in a responsive pleading or have litigated it by consent of the parties." *Id*. (citations omitted). Failure to do so generally results in waiver of the issue on appeal. *Id*.

[21] Here, Geels did not specifically raise ERISA preemption as an affirmative defense in her pleadings. But her former codefendant, MetLife, did. Indeed, MetLife alerted Daughters and the trial court that Daughters' petition for a constructive trust over the insurance proceeds made claims and sought remedies

---

[5] Our analysis of this issue (and the following issue) is derived from our original opinion in *Geels*, 237 N.E.3d 674. Although our opinion in that case was vacated by our Supreme Court when it granted transfer, our Supreme Court's *per curiam* opinion on transfer did not address the issues we addressed in our original opinion. We see no reason to deviate from our original decision and, accordingly, substantially incorporate our analysis from that opinion into this opinion.

that were "pre-empted by ERISA." Appellant's App. Vol. II p. 96. The parties' agreed motion for interpleader, which the trial court granted, clearly stated that David's insurance policies were part of an employee-welfare benefit plan governed by ERISA; that MetLife was bound to administer claims in accordance with ERISA and the documents governing the plan; that ERISA defines a beneficiary as a person designated by a participant; and that the employer's plan established the right of the plan participant to name his or her beneficiary.

[22] The plan documents were attached to the agreed motion for interpleader and were also introduced into evidence at trial as Joint Exhibit 1. The plan documents include six pages under the title "ERISA Information." *Id.* at 194. The order granting the agreed motion for interpleader also referenced ERISA, as it stated that the court granted "the Agreed Motion for Interpleader based on the benefits payable under an employee welfare benefit plan [], a plan governed by the Employee Retirement Income Security Act of 1974, as amended ('ERISA'), 29 U.S.C. § 1001, et seq., . . . ." *Id.* at 201. And Geels' answer to the complaint asserted that Daughters "fail[ed] to state a cause of action upon which relief can be granted" and that, "[b]y MetLife's representations and documentation, MetLife inherently knows and has knowledge of the designated beneficiary." *Id.* at 100-01.

[23] Under the circumstances, we conclude that, despite Geels' failure to specifically raise ERISA preemption as an affirmative defense to Daughters' petition for a constructive trust, the issue was squarely before the trial court. We, therefore,

decline to find that the issue is waived. Our conclusion in this regard is in line with the general concerns the waiver rule seeks to protect. "The rule of waiver in part protects the integrity of the trial court; it cannot be found to have erred as to an issue or argument that it never had an opportunity to consider." *GKC Ind. Theatres, Inc. v. Elk Retail Invs., LLC*, 764 N.E.2d 647, 651 (Ind. Ct. App. 2002). Additionally, "[a] 'crucial factor' in determining whether a party may raise 'what appears to be a new issue' on appeal is whether the other party 'had unequivocal notice of the existence of the issue and, therefore, had an opportunity to defend against it.'" *Collins Asset Grp., LLC v. Alialy*, 139 N.E.3d 712, 714-715 (Ind. 2020) (quoting *Moryl v. Ransone*, 4 N.E.3d 1133, 1136-1137 (Ind. 2014)). As both Daughters and the trial court were on notice that the insurance policies at the heart of this case were governed by ERISA, we proceed to address the merits of Geels' preemption argument.

### D. ERISA preempts imposing the equitable, state-law remedy of a constructive trust.

[24] Geels' main contention on appeal is that ERISA preempts state-law remedies, including equitable remedies such as the constructive trust imposed by the trial court here.[6] We agree.

> The stated purpose of ERISA is to "protect . . . participants in
> employee benefit plans and their beneficiaries, by requiring the

---

[6] Daughters make no claim that ERISA does not apply to the policies. Nor could they, as they joined in the motion for interpleader which clearly stated that David "participated in the employee welfare benefit plan" governed by ERISA, the plan was funded by the group life insurance policy issued by MetLife to David's employer, and that "MetLife . . . must administer claims in accordance with ERISA . . . ." Appellant's App. Vol. II p. 105.

disclosure and reporting to participants and beneficiaries of financial and other information with respect thereto, by establishing standards of conduct, responsibility, and obligation for fiduciaries of employee benefit plans, and by providing for appropriate remedies, sanctions, and ready access to Federal courts." ERISA creates a federal statutory claim for recovery of "benefits due to [the beneficiary] **under the terms of his plan, to enforce his rights under the terms of the plan**, or to clarify his rights to future benefits under the terms of the plan[.]"

*Midwest Sec. Life Ins. Co. v. Stroup*, 730 N.E.2d 163, 166 (Ind. 2000) (quoting 29 U.S.C. §§ 1001(b), 1132(a)(1)(B)).[7]

[25] ERISA "establishes minimum federal standards governing employee-benefit plans" and the "responsibility for regulating this system of benefit plans is exclusively a federal concern." *FMS Nephrology Partners N. Cent. Ind. Dialysis Centers, LLC v. Meritain Health, Inc.*, 144 N.E.3d 692, 696 (Ind. 2020). Congress designed ERISA "to promote the interests of employees and their beneficiaries in employee benefit plans." *Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133, 137 (1990) (quoting *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 90 (1983)). "To further the goal of uniform federal standards, ERISA contains two preemption provisions." *FMS*, 144 N.E.3d at 696.

[26] At issue here is the first of these two preemption provisions: ERISA's express (or conflict) preemption provision, which provides that ERISA preempts "all

---

[7] What *Stroup* referred to as Section 502 of ERISA is listed at 29 U.S.C. § 1132. For the sake of clarity, we refer to the Sections of ERISA by their section numbers as listed in the United States Code.

State laws insofar as they . . . relate to any employee benefit plan" covered by ERISA. 29 U.S.C. § 1144(a).[8] This provision "was intended to ensure that plans and plan sponsors would be subject to a uniform body of benefits law; the goal was to minimize the administrative and financial burden of complying with conflicting directives among States or between States and the Federal Government." *Ingersoll-Rand*, 498 U.S. at 142.

[27] The United States Supreme Court has taken a broad view of what it means for a state law to "relate to" an ERISA covered plan and has determined that there are "two categories of state laws that ERISA preempts: laws having a 'reference to' and those having a 'connection with' an ERISA plan." *FMS*, 144 N.E.3d at 702-703 (quoting *Gobeille v. Liberty Mut. Ins. Co.*, 577 U.S. 312, 319 (2016)). Among other things, having a "connection with" an ERISA plan means that a state law will be preempted when it "governs . . . a central matter of plan administration" or "interferes with nationally uniform plan administration[.]" *Id.* (quoting *Gobeille*, 577 U.S. at 320).

[28] In *Egelhoff v. Egelhoff*, 532 U.S. 141, 146-147 (2001), the United States Supreme Court addressed whether a state law had a "connection with" ERISA and held that a Washington statute was expressly preempted by ERISA because it required plan[9] administrators to pay beneficiaries as determined by state family law rather than plan documents. The Court reasoned that the statute had an

---

[8] This is also referred to as ERISA Section 514(a).

[9] The plans in *Egelhoff* were an employer-provided life insurance policy and a pension plan. *Id.* at 144.

"impermissible connection" with ERISA because it bound plan administrators to a particular choice of state law rules for determining beneficiaries, thereby implicating an area of "core ERISA concern." *Id*. at 147. The Court also held that the statute ran "counter to ERISA's commands" that employee benefit plans "shall 'specify the basis on which payments are made to and from the plan,' § 1102(b)(4), and that the fiduciary shall administer the plan 'in accordance with the documents and instruments governing the plan,' § 1104(a)(1)(D), making payments to a 'beneficiary' who is 'designated by a participant, or by the terms of [the] plan.' § 1002(8)." *Id*. The Court held that the state law interfered with one of the main goals of ERISA, which is "to enable employers 'to establish a uniform administrative scheme, which provides a set of standard procedures to guide processing of claims and disbursement of benefits.'" *Id*. at 148 (quoting *Fort Halifax Packing Co. v. Coyne*, 482 U.S. 1, 9 (1987)). This supports a conclusion that ERISA preempts the state-law remedy imposed by the court here.

More directly on point is the Seventh Circuit's opinion in *Melton v. Melton*, 324 F.3d 941 (7th Cir. 2003), which relied on *Egelhoff*. In *Melton*, the minor daughter of the deceased filed suit in Illinois state court seeking to impose a constructive trust upon the proceeds of the deceased's ERISA-regulated group term life insurance policy and prevent the named beneficiary, the decedent's ex-wife, from receiving the proceeds. *Id*. at 945. The Court held that the daughter could not invoke a state law doctrine to her advantage to determine her status as a beneficiary under an ERISA-regulated employee benefit plan. *Id*. Instead,

the Court held that "ERISA preempted Illinois state law with respect to determining the rightful beneficiary of [the decedent's] ERISA-regulated group term life insurance policy." *Id*. Thus, because the decedent's ERISA-regulated plan determined "beneficiary status according to the person(s) named in the plan documents," the court determined that the decedent's ex-wife was the proper beneficiary of the insurance policy. *Id*.

[30] Thus, both *Egelhoff* and *Melton* illustrate that federal law mandates the distribution of ERISA benefits to the designated beneficiary, regardless of state law providing otherwise. *See also Metro. Life Ins. Co. v. Johnson*, 297 F.3d 558, 566 (7th Cir. 2002) (noting that "*Egelhoff* stands for the proposition that a state law cannot invalidate an ERISA plan beneficiary designation by mandating distribution to another person"); *Barnett v. Barnett*, 67 S.W.3d 107, 126 (Tex. 2001) (holding that ERISA preempted estranged wife's claim of constructive fraud and imposition of constructive trust over life insurance proceeds and that proceeds should instead go to decedent's mother as the designated beneficiary).

[31] Here, the trial court specifically found that David designated Geels as the beneficiary of his ERISA-regulated life insurance policies. The trial court's consideration of David's intent in doing so is of no moment under ERISA, and the court's imposition of a constructive trust based on those factors was clear

error.  *See Melton*, 324 F.3d at 945.  As the designated beneficiary, Geels is entitled to the proceeds.[10]

## Conclusion

[32] The law-of-the-case doctrine does not preclude Geels' ERISA preemption argument, nor did Geels waive her ERISA preemption argument.  Moreover, ERISA preempts state-law equitable remedies, such as the constructive trust imposed here.  Accordingly, we reverse the trial court's judgment imposing a constructive trust and remand with instructions for the trial court to order the Clerk of Allen County to distribute the proceeds of the life insurance policies to Geels.

[33] Reversed and remanded.

Altice, C.J., and Brown, J., concur.

ATTORNEY FOR APPELLANT

Robert J. Palmer
May Oberfell Lorber LLP
Mishawaka, Indiana

ATTORNEYS FOR APPELLEES

Nathan S.J. Williams
Shannon K. Connors
Shambaugh Kast Beck & Williams, LLP
Fort Wayne, Indiana

---

[10] Because we find dispositive that ERISA preempts state law and defeats Daughters' claim for a constructive trust under Indiana substantive law, we need not address Geels' alternative assertions that the trial court's findings do not support imposing a constructive trust.