

FILED

Mar 04 2019, 10:09 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Stephanie L. Nemeth
Anderson Agostino & Keller, P.C.
South Bend, Indiana

Caroline Turner English
Brian D. Schneider
Emily Baver Slavin
Arent Fox LLP
Washington, DC

ATTORNEYS FOR APPELLEES
BEACON HEALTH SYSTEM, INC.,
BEACON HEALTH SYSTEM GROUP
PLAN, AND BEACON HEALTH
SYSTEM GROUP PLAN – UNION
PLAN

Joseph L. Amaral
R. William Jonas
Hammerschmidt, Amaral &
Jonas
South Bend, Indiana

Richard B. Urda, Jr.
Urda Professional Corporation
South Bend, Indiana

ATTORNEYS FOR APPELLEES
UNIVERSITY OF NOTRE DAME DU
LAC, UNIVERSITY OF NOTRE
DAME CHA HMO PLAN
(MEDICAL), UNIVERSITY OF
NOTRE DAME SELECT HMO PLAN
(MEDICAL), AND UNIVERSITY OF
NOTRE DAME PPO PLAN
(MEDICAL)

Brian E. Casey
Kelly J. Hartzler
Alice J. Springer
Barnes & Thornburg LLP
South Bend, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

FMS Nephrology Partners
North Central Indiana Dialysis
Centers, LLC,

*Appellant-Plaintiff,*

v.

Meritain Health, Inc., Beacon
Health System, Inc., Beacon
Health System Group Benefit
Plan, Beacon Health System
Group Benefit Plan – Union
Plan, University of Notre Dame
Du Lac, University of Notre
Dame CHA HMO Plan
(Medical), University of Notre
Dame Select HMO Plan
(Medical), and University of
Notre Dame PPO Plan
(Medical),

*Appellees-Defendants.*

March 4, 2019

Court of Appeals Case No.
18A-PL-1349

Appeal from the St. Joseph
Superior Court

The Honorable Steven L.
Hostetler, Judge

Trial Court Cause No.
71D07-1605-PL-194

**Bradford, Judge.**

# Case Summary

[1]     FMS Nephrology Partners North Central Indiana Dialysis Centers, LLC

("FMS") provides dialysis to patients suffering from end-stage renal disease.

FMS filed suit against Meritain Health, Inc.; Beacon Health System, Inc.;

Beacon Health System Group Benefit Plan; Beacon Health System Group

Benefit Plan–Union Plan (collectively, "the Beacon Appellees"); University of

Notre Dame du Lac; University of Notre Dame CHA HMO Plan (Medical); University of Notre Dame Select HMO Plan (Medical); and University of Notre Dame PPO Plan (Medical) (collectively, "the Notre Dame Appellees") (collectively all together, "the Appellees") claiming that Appellees failed to provide proper payment for services rendered by FMS. The Beacon and Notre Dame Appellees sought summary judgment, arguing that FMS's claims against them were preempted by the Employee Retirement Income Security Act ("ERISA"). The trial court agreed and granted summary judgment in favor of the Beacon and Notre Dame Appellees. FMS challenges the award of summary judgment on appeal. Because the record demonstrates that resolution of each of the claims at issue requires interpretation of the provisions of an ERISA-governed health plan, we are firmly convinced that FMS's claims against the Beacon and Notre Dame Appellees are preempted by ERISA. We therefore affirm.

# Facts and Procedural History[1]

## I. The Parties

FMS provides dialysis for patients suffering from end-stage renal disease. The Beacon Health System Group Benefit Plan and the Beacon Health System Group Benefit Plan–Union Plan (collectively, "the Beacon Plans") are welfare

---

[1] We held oral argument in this case on February 12, 2019, at the Indiana State House in Indianapolis. We wish to commend counsel for the high quality of their arguments.

plans offering healthcare and medical benefits to eligible employees of Beacon Health System, Inc., and their dependents. Beacon Health System is the sponsor, plan administrator, and named fiduciary of the Beacon Plans. The Notre Dame CHA HMO Plan (Medical), University of Notre Dame Select HMO Plan (Medical), and University of Notre Dame PPO Plan (Medical) (collectively, the Notre Dame Plans") are health plans offering medical benefits to eligible employees of the University of Notre Dame du Lac and their dependents. The University of Notre Dame du Lac is the sponsor, plan administrator, and named fiduciary of the Notre Dame Plans. Meritain serves as the third-party claims administrator for the Beacon and Notre Dame Plans. As the third-party claims administrator, Meritain is responsible for overseeing network contracts and adjudicating claims and appeals for reimbursement from the Beacon and Notre Dame Plans in accordance with network and other agreements.

## II. Services Rendered to Patients/Disputes Relating to Payment

### A. The Beacon Appellees

[3] The Beacon Plans provided participants and their beneficiaries with certain medical benefits as detailed by the Plans. The Beacon Plans also set forth the exclusive procedure for a participant or beneficiary to appeal the denial of a claim. The claims procedures, as adopted, complied with the requirements of ERISA and the regulations promulgated by the United States Department of Labor. Each procedure required an appeal be filed by a participant or

beneficiary or the claimant's legal representative within 180 days after notice of the initial denial of the claim.

[4] In its lawsuit, FMS alleged insufficient payment relating to two Beacon patients, who were participants in the Beacon Plans. The first received dialysis services from FMS from July of 2012 through March of 2015. The second received dialysis services from FMS from June of 2013 through May of 2015. Some, but not all, of the charges relating to the services provided by FMS were paid by the Beacon Plans after approval by Meritain.

## B. The Notre Dame Appellees

[5] The Notre Dame Plans provided participants and beneficiaries with certain medical benefits as detailed by the Plans and defined the medical expenses eligible for coverage. The Notre Dame Plans also set forth the procedure for filing an appeal following denial of a claim. The claims procedures, as adopted, complied with the requirements of ERISA and the regulations promulgated by the United States Department of Labor.

[6] In its lawsuit, FMS alleged insufficient payment relating to five Notre Dame patients, who were participants in the Notre Dame Plans and received dialysis services from FMS for the following periods:

> Patient 1—March of 2011 through November of 2013,
> Patient 2—August of 2013 through November of 2014,
> Patient 3—December of 2013 through January of 2015,
> Patient 4—January of 2013 through June of 2013, and
> Patient 5—April of 2012 through March of 2014.

Some, but not all, of the charges for services provided by FMS to the patients were paid by the Notre Dame Plans after approval by Meritain. For instance, some of the charges specifically relating to one of the patients were not paid after the services at issue were found to not qualify as "covered services" because the services were deemed to not have not been medically necessary.[2]

# III. The Litigation

On May 26, 2016, FMS filed a complaint against the Appellees alleging breach of contract and promissory estoppel. In its complaint, FMS made the following allegations:

12. [FMS] is a participating provider in two networks in which the [Beacon and Notre Dame] Plans also participate. Accordingly, payments for treatments rendered to patients covered by the Plans should have been made pursuant to the network terms.

13. [FMS] provided regular, life-sustaining dialysis treatments to seven patients whose healthcare was covered by the Plans. [The Appellees] confirmed that they would pay for the treatments at rates agreed upon in network agreements, to which each of them was bound. Beginning as early as 2011 and continuing through 2015, [the Appellees] breached those contracts and paid amounts that fell drastically short of the network rates.

---

[2] The parties spent time, both in writing and during the oral argument, discussing whether the seven patients properly assigned their rights to FMS. Because we would reach the same conclusion either way, we need not reach a conclusion on the adequacy of the assignments.

14. Each of the Plans has one thing in common: Meritain. For all relevant periods, Meritain served as the claims administrator for the Plans. [FMS] was directed to submit its claims for payment to Meritain, and in turn Meritain would adjudicate, price, and on information and belief, pay the claims on the Plans' behalves.

15. Meritain's claims adjudication practices were improper under the applicable network agreements. Meritain ignored the binding network contracts that dictated payment rates, and knowingly facilitated breaches of contract with an intent to harm [FMS].

16. Meritain and the other [Appellees] failed to meet their contractual and equitable obligations to [FMS]. As a consequence, the Plans underpaid [FMS] a collective amount of over $1.5 million.

17. [FMS] brings this action to recover the deficiency in the amount it was paid.

FMS's App. Vol. II pp. 44–45.

[8] On April 28, 2017, FMS moved for partial summary judgment against the Beacon and Notre Dame Appellees. On September 8, 2017, the Notre Dame Appellees filed a cross-motion for partial summary judgment. In this motion, the Notre Dame Appellees claimed that they were entitled to summary judgment because all of FMS's claims against them were preempted by ERISA. That same day, the Beacon Appellees filed a motion for partial summary judgment. The Beacon Appellees also claimed that they were entitled to

summary judgment because all of FMS's claims against them were preempted by ERISA.

[9] The trial court conducted a hearing on the preemption issue on March 23, 2018. Five days later, on March 28, 2018, the trial court issued an order in which it found that the Beacon and Notre Dame Appellees were entitled to summary judgment because the claims raised against them by FMS were preempted by ERISA. The trial court subsequently entered final judgment in favor of the Beacon and Notre Dame Appellees.[3]

# Discussion and Decision

[10] FMS contends that the trial court erred in granting summary judgment to the Beacon and Notre Dame Appellees.

> [S]ummary judgment is appropriate only where the evidence shows there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. *See* Ind. Trial Rule 56(C); *Shell Oil Co. v. Lovold Co.*, 705 N.E.2d 981 (Ind. 1998). All facts and reasonable inferences drawn from those facts are construed in favor of the non-moving party. *Colonial Penn Ins. Co. v. Guzorek*, 690 N.E.2d 664 (Ind. 1997). The review of a summary judgment motion is limited to those materials designated to the trial court. *See* T.R. 56(H); *see also Rosi v. Business Furniture Corp.*, 615 N.E.2d 431 (Ind. 1993). We review decisions on summary judgment motions carefully to ensure that the parties were not improperly denied their day in court. *Estate*

---

[3] The trial court's order did not address FMS's claims against Meritain and resolution of these claims has been stayed pending resolution of this appeal.

*of Shebel ex rel. Shebel v. Yaskawa Elec. Am., Inc.*, 713 N.E.2d 275 (Ind. 1999).

*Midwest Sec. Life Ins. Co. v. Stroup*, 730 N.E.2d 163, 165 (Ind. 2000). The question of whether ERISA preempts FMS's claims is a question of law. *See id.* at 166. Therefore, it is a question that may be properly determined on a motion for summary judgment. *See id.*

# I.  Overview of Preemption and the Law Governing ERISA

"'ERISA is a comprehensive statute designed to promote the interests of employees and their beneficiaries in employee benefit plans.'" *Ingersoll–Rand Co. v. McClendon*, 498 U.S. 133, 137 (1990) (quoting *Shaw v. Delta Air Lines Inc.*, 463 U.S. 85, 90 (1983)).

> Congress enacted ERISA to "protect ... the interests of participants in employee benefit plans and their beneficiaries" by setting out substantive regulatory requirements for employee benefit plans and to "provid[e] for appropriate remedies, sanctions, and ready access to the Federal courts." 29 U.S.C. § 1001(b). The purpose of ERISA is to provide a uniform regulatory regime over employee benefit plans. To this end, ERISA includes expansive pre-emption provisions, see ERISA § 514, 29 U.S.C. § 1144, which are intended to ensure that employee benefit plan regulation would be "exclusively a federal concern." [*Alessi v. Raybestos–Manhattan, Inc.*, 451 U.S. 504, 523 (1981)].

*Aetna Health Inc. v. Davila*, 542 U.S. 200, 208 (2004). "The question of whether a certain state action is pre-empted by federal law is one of congressional intent.

The purpose of Congress is the ultimate touchstone." *Ingersoll–Rand*, 498 U.S. at 137–38 (internal quotation omitted).

[12] "To discern Congress' intent we examine the explicit statutory language and the structure and purpose of the statute." *Id.* at 138.

> Where, as here, Congress has expressly included a broadly worded pre-emption provision in a comprehensive statute such as ERISA, our task of discerning congressional intent is considerably simplified. In § 514(a) of ERISA, as set forth in 29 U.S.C. § 1144(a), Congress provided:
>
>> "Except as provided in subsection (b) of this section, the provisions of this subchapter and subchapter III of this chapter shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this title and not exempt under section 1003(b) of this title."
>
> "The pre-emption clause is conspicuous for its breadth." [*FMC Corp. v. Holliday*, 498 U.S. 52, 58 (1990)]. Its "deliberately expansive" language was "designed to 'establish pension plan regulation as exclusively a federal concern.'" [*Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 46 (1987)] (quoting [*Alessi*, 451 U.S. at 523]). The key to § 514(a) is found in the words "relate to." Congress used those words in their broad sense, rejecting more limited pre-emption language that would have made the clause "applicable only to state laws relating to the specific subjects covered by ERISA." [*Shaw*, 463 U.S. at 98]. Moreover, to underscore its intent that § 514(a) be expansively applied, Congress used equally broad language in defining "State law" that would be pre-empted. Such laws include "all laws, decisions, rules, regulations, or other State action having the effect of law." § 514(c)(1), 29 U.S.C. § 1144(c)(1).

*Id.* at 138–39. Stated differently, "ERISA's pre-emption provision assures that federal regulation of covered plans will be exclusive."[4] *District of Columbia v. Greater Washington Bd. of Trade*, 506 U.S. 125, 127 (1992).

[13]
> "A law 'relates to' an employee benefit plan, in the normal sense
> of the phrase, if it has a connection with or reference to such a
> plan." [*Shaw*, 463 U.S. at 96–97]. Under this "broad common-
> sense meaning," a state law may "relate to" a benefit plan, and
> thereby be pre-empted, even if the law is not specifically designed
> to affect such plans, or the effect is only indirect. [*Pilot Life*, 481
> U.S. at 47]. See also [*Alessi*, 451 U.S. at 525]. Pre-emption is
> also not precluded simply because a state law is consistent with
> ERISA's substantive requirements. [*Metro. Life Ins. Co. v. Mass.*,
> 471 U.S. 724, 739 (1985)].

*Ingersoll–Rand*, 498 U.S. at 139. Further, "[t]he preemption provision may apply even to laws that are not specifically designed to affect employee benefit plans or to laws that affect the plans only indirectly." *Stroup*, 730 N.E.2d at 166. "It is not the label placed on a state law claim that determines whether it is preempted, but whether in essence such a claim is for the recovery of an ERISA plan benefit." *Productive MD, LLC v. Aetna Health, Inc.*, 969 F. Supp. 2d 901, 935 (M.D. Tenn. 2013). "ERISA's preemption provisions must be given effect, even if they would leave a claimant without a remedy." *Id.*

---

[4] While ERISA's preemption coverage is broad, there are "[s]everal categories of state laws, such as generally applicable criminal laws and laws regulating insurance, banking, or securities, [that] are excepted from ERISA pre-emption by § 514(b)[.]" *Bd. of Trade*, 506 U.S. at 127.

## II. The Trial Court's Award of Summary Judgment to the Beacon and Notre Dame Appellees

[14]    In granting summary judgment to the Beacon and Notre Dame Appellees, the trial court noted that

> ERISA § 514(a) expressly preempts "any and all State laws" that "relate to" an ERISA plan. *See* 29 U.S.C. § 1144(a). A state law, including a state law claim, "relates to" an employee benefit plan "if it has a connection with or reference to such a plan." *New York State Conf. of Blue Cross & Blue Shield Plans v. Travelers. Ins. Co.*, 514 U.S. 645, 656 (1995), quoting [*Shaw*, 463 U.S. at 96–97].

FMS's App. Vol. II, pp. 34–35.

[15]    Applying the above-quoted federal statutory and United States Supreme Court precedent to the facts of this case, the trial court concluded that

> [T]he only way to determine whether and why a patient would not be responsible to a provider when the plan sponsor does not pay is to refer to the plan documents themselves. Further, the contracts relied upon by [FMS] provide, in essence, that the amount [FMS] should receive is to be determined by the plan documents. Hence, "related to" or "conflict" preemption under § 514(a) becomes the focus.

FMS's App. Vol. II, pp. 36–37 (brackets added). The trial court further concluded

> In this case, [FMS] argues that the issue of how much the plans are required to pay can be decided outside the plan documents. However, the state law claims [FMS] seeks to enforce require application and/or interpretation of the plan documents to

determine how much medical care providers are to be paid. So even if [FMS] is correct that the EOBs[5] conclusively establish that the claims are covered, the question of how much is payable requires the application of, reference to and/or interpretation of the plan documents. Therefore, claims asserted by [FMS] in its Complaint are preempted by ERISA under 29 U.S.C. § 1144(a).

FMS's App. Vol. II, p. 38 (brackets added).

# III. Analysis

FMS asserts that the trial court erred in finding that its claims are preempted by ERISA because the claims involve only contract and quasi-contract claims which should be resolved in the State courts. In making this assertion, FMS indicates that it is seeking recovery under two non-ERISA-regulated contracts, not the Beacon or Notre Dame Plans, and that the trial court need only have considered the non-ERISA-regulated contracts to resolve its claims. The Beacon and Notre Dame Appellees disagree, asserting that the trial court was required to interpret the Beacon and Notre Dame Plans to resolve FMS's claims.

The Indiana Supreme Court has previously adopted a broad interpretation of what qualifies as an ERISA-related question. In *Stroup*, the Court considered whether the claims at issue were preempted by ERISA. 730 N.E.2d at 166–67. In that case, the Stroups were beneficiaries of an ERISA plan. *Id.* at 165. They

---

[5] "EOB" commonly stands for "Explanation of Benefits."

brought suit against the plan, claiming breach of contract and bad faith and seeking injunctive relief and damages. *Id.* The plan moved for summary judgment, arguing that the plaintiffs' claims were preempted by ERISA. *Id.* After the trial court determined that the plaintiffs' claims were not preempted by ERISA, the plan sought and received permission to file an interlocutory appeal. *Id.* Upon appeal, the Indiana Supreme Court reached the following conclusion:

> It appears clear that Stroups' breach of contract and bad faith claims "relate to" employee benefit plans and therefore fall under the broad preemption provisions of ERISA. These claims are based on Midwest's failure to pay benefits due under an ERISA-governed pension plan. The complaint asks for damages for breach of the insurance contract and for punitive and compensatory damages for the tort of bad faith based on Midwest's denial of coverage under the insurance contract. The claims clearly have connection with and refer to the ERISA plan.

*Id.* at 166–67. The Court further concluded that the "essence of the claims is a failure to supply benefits under the plan" and "there simply is no cause of action if there is no plan." *Id.* at 167. Thus, "[b]ecause the Stroups' claims 'relate to' an employee benefit plan, in this case their medical insurance, the claims fall under ERISA's broad preemption powers." *Id.*

[18] We also find instructive the United States District Court for the District of Alaska's recent opinion in *Ray Klein, Inc. v. Board of Trustees of the Alaska Electrical Health & Welfare Fund*, 307 F. Supp. 3d 984 (D. Alaska 2018), in which the District Court considered a similar scenario to that presented in this case.

In *Ray Klein*, plaintiff, on behalf of the hospital that provided medical services to the patients at issue, filed suit against the Welfare Fund after it determined that some of the submitted charges did not qualify as covered services under the terms of its ERISA plan. 307 F. Supp. 3d at 986. The plaintiff argued that the case was based on the Fund's failure to pay sums due and, as such, qualified as a "rate of payment" case and was not preempted by ERISA's preemption provision while the Fund argued that because the plaintiff's claims related to an ERISA plan, the claims were preempted by ERISA's preemption provision. *Id.* at 987–88.

[19] In considering the parties' arguments, the district court noted that "[t]he dispute here centers on whether certain services provided to the [patients] by [the hospital] were not 'Unusual, Customary, and Reasonable for the area and type of Service,' so as to fall outside the Plan's definition of Covered Charges." *Id.* at 988–89. The district court further noted that the plaintiff "is unable to escape the fact that the terms of the Fund's ERISA Plan dictate the services the Fund covers, which eviscerates [plaintiff's] arguments that its claims do not relate to the Fund's Plan." *Id.* at 989. On the question of preemption, the district court went on to conclude as follows:

> The Plan that governs the [patients'] coverage is critical to the determination of what amounts are payable to [the hospital] by the Fund for the healthcare provided to the [patients].… The amounts [plaintiff] claims are owed by the Fund depend on the Plan's definitions of the scope of covered charges and therefore dictate[] the amount of the [patients'] medical charges that the Fund would cover. Therefore, the "claim bears on an ERISA-

regulated relationship, *e.g.*, the relationship between plan and plan member[.]" Despite [plaintiff's] assertions of an independent basis for its claims, the dispute is not "merely between a health plan and a hospital." Without the Plan, [plaintiff] would not have a claim against the Fund, whose selective coverage of the [patients'] medical expenses is the sole source of the instant dispute. Resolving the merits of the dispute would require reference to and interpretation of the Plan. It is clear that "the claim is premised on the existence of an ERISA plan" and has a "connection with or reference to" an ERISA plan. Accordingly, [plaintiff's] state law claims relate to an ERISA plan and are preempted under 29 U.S.C. § 1144(a).

*Id.* at 992.

[20] Similar to both *Stroup* and *Ray Klein*, FMS's claims are based on an alleged failure to pay sums due for services covered by an ERISA-regulated plan. Review of the parties' arguments and designated evidence demonstrates that, despite FMS's assertion to the contrary, the trial court would have had to refer to and interpret the Beacon and Notre Dame Plans to determine (1) whether proper payment had been rendered, and, (2) if not, how much additional payment FMS was entitled to receive. For each of the seven patients, designated evidence illustrates that questions remain as to FMS's right to recover additional payment.[6] Like the trial court, we do not believe that it is

---

[6] For instance, Annetta Vota, a Benefits Manager for Beacon Health System, averred that with respect to the two Beacon patients, FMS had been paid in full pursuant to the terms of the Beacon Plans and that the claims that were alleged to be underpaid were not "clean claims" to which FMS was entitled to payment. The same is true of the claims relating to the five Notre Dame patients. As to the Beacon patients, Vota averred that the challenged claims included duplicate billing for charges that had previously been paid in full; charges that were to be paid by the patients, not the Beacon Plans; and charged for services not covered by the Beacon Plans. As to the Notre Dame patients, designated evidence indicates that the unpaid portions of

possible to adequately answer these remaining questions without referencing and interpreting the Beacon and Notre Dame Plans. We therefore conclude that the trial court correctly determined that FMS's claims against the Beacon and Notre Dame Appellees were preempted by ERISA.

[21] Further, we note that FMS's reliance on *Blue Cross of California v. Anesthesia Care Associates Medical Group, Inc.*, 187 F.3d 1045 (9th Cir. 1999) and *In re Managed Care Litigation*, 298 F. Supp. 2d 1259 (S.D. Fla. 2003), is misplaced. The courts in those cases were faced with significantly different questions, *i.e.*, the effect of allegedly improper changes to a fee schedule set forth in a non-ERISA-regulated contract, *Anesthesia Care*, 187 F.3d at 1049, and questions relating to the amount of payment, *In re Managed Care*, 298 F. Supp. 2d at 1293, not whether a right to payment existed.[7]

[22] Having concluded that the trial court properly awarded summary judgment to the Beacon and Notre Dame Appellees, we need not consider the alternative arguments raised by the parties.

[23] The judgment of the trial court is affirmed.

---

FMS's claims relating to these patients were not paid because the claims were duplicates of other claims, represented portions to be paid by the patients, or were not medically necessary.

[7] We note that FMS also provided a string-citation to a number of cases which it claims stand for the proposition that cases involving only rate questions covered by contracts other than an ERISA plan are not preempted by ERISA. Given our conclusion that the instant matter involves questions relating to FMS's right to recover payment, we find these additional cases to be inapposite and do not discuss them herein.

Bailey, J., and Brown, J., concur.