



FILED

May 11 2020, 3:27 pm

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

IN THE

# Indiana Supreme Court

Supreme Court Case No. 20S-PL-302

## FMS Nephrology Partners North Central Indiana Dialysis Centers, LLC,

*Appellant,*

–v–

## Meritain Health, Inc., et al.,

*Appellees.*

---

Argued: October 10, 2019 | Decided: May 11, 2020

Appeal from the St. Joseph Superior Court
No. 71D07-1605-PL-194
The Honorable Steven L. Hostetler, Judge

On Petition to Transfer from the Indiana Court of Appeals
Case No. 18A-PL-1349

---

**Opinion by Justice Slaughter**

Chief Justice Rush and Justices Massa and Goff concur.

Justice David concurs in result.

**Slaughter, Justice.**

The Employee Retirement Income Security Act of 1974 establishes minimum federal standards governing employee-benefit plans. Under ERISA, the responsibility for regulating this system of benefit plans is exclusively a federal concern. To further the goal of uniform federal standards, ERISA contains two preemption provisions. These provisions' preemptive effect on state laws is far-reaching but not absolute. Some state laws—and hence the claims arising under such laws—survive ERISA preemption, such as those not requiring interpretation of benefit-plan documents. A claim withstands preemption to the extent its validity turns not on the meaning of the plan documents but on a separate legal duty independent of the plan.

Here, a health-care provider sued defendant health-insurance plans, which are governed by ERISA, alleging they failed to pay agreed reimbursement rates for covered services under their plans. On this record, we hold that the trial court erred by entering summary judgment for the defendant plans based on ERISA preemption. A key factual dispute exists concerning a central issue in this case. Contrary to the defendants' arguments, the designated summary-judgment evidence does not establish either that the provider's claims were denied coverage under the plans or that the provider's claims necessitate interpreting the plan documents. We grant transfer, vacate the entry of summary judgment for the defendants, and remand with instructions.

# Background Facts and Procedure

Third-party networks are common in the health-care industry. These networks serve as middlemen that connect patients with health-care providers by entering separate, individual contracts with both providers and employee-health plans. The plans receive access to a network of certified providers that have agreed to be reimbursed at negotiated rates discounted from the provider's full sticker price. And providers within these networks receive the certainty and predictability of fixed rates with prompt reimbursement.

Plaintiff, FMS Nephrology Partners North Central Indiana Dialysis Centers, LLC, is a health-care provider. It owns and operates facilities in Indiana that provide dialysis treatments to patients suffering from end-stage renal disease, and it participates in third-party networks. Over the years, FMS has contracted with two such networks, Community Health Alliance and Select Health Network. Defendants University of Notre Dame and its affiliated employee health-insurance plans have contracted with both health networks. Defendants Beacon Health and its affiliated employee health-insurance plans have contracted only with Community Health Alliance.

To handle various claims-administration functions for the plans, both the Notre Dame and Beacon Health plans engaged Defendant Meritain Health as their third-party administrator. In that capacity, Meritain processes the claims a health-care provider submits to the Notre Dame and Beacon Health plans. Meritain then issues an "Explanation of Benefits" for each claim. The EOB memorializes information about the claim, including the date of service, the total amount billed, and whether the claim is covered under the plan. This coverage determination is reflected in an EOB's various columns:

- "Provider Discount",
- "Ineligible Amount",
- "Pymt Made By Plan",
- "Patient Responsibility", and
- "Notes".

Once Meritain determines that a claim is covered under the applicable plan, the provider agrees to accept, and Notre Dame and Beacon Health agree to pay, the discounted rates for that provider's services as reflected in the network agreements.

Of relevance here, seven patients received dialysis-related treatments from FMS over a four-year period: five patients were covered under Notre Dame's plans and two under Beacon Health's plans. As administrator, Meritain issued EOBs for the claims FMS submitted. According to FMS, the EOBs show Meritain's coverage determinations and the agreed reimbursement payable to FMS for services rendered. FMS alleges that

some line items in the EOBs reflect that it received the negotiated rate for its claims, while other line items show the claims were subject to a one-hundred-percent "Provider Discount". According to FMS, some of these amounts reflect claims for covered services for which FMS received an amount less than the agreed rates.

FMS thus sued Meritain, Notre Dame, and Beacon Health, alleging, among other things, breaches of the Community Health Alliance and Select Health Network agreements. FMS also sued in the alternative for implied contract and promissory estoppel. Notre Dame and Beacon Health answered that FMS's claims were foreclosed under principles of both "complete" and "conflict" ERISA preemption. Early in discovery, FMS moved for summary judgment on its claim that Notre Dame and Beacon Health breached the Community Health Alliance network agreement. Notre Dame and Beacon Health opposed this motion and cross-moved for summary judgment, again arguing ERISA preemption. These defendants also argued lack of contractual privity between FMS and themselves.

The trial court granted the defendants' motions and entered partial summary judgment in their favor and against FMS, concluding that FMS's claims were preempted under ERISA's conflict-preemption provision, 29 U.S.C. § 1144(a). The court believed that resolving payment disputes under the network contracts would require it to interpret the plans' terms to determine how much FMS was owed. In addition, the court found there was no just reason for delay and directed the entry of final judgment under Trial Rule 54(B) in favor of the Notre Dame and Beacon Health defendants and against FMS.

The court of appeals affirmed, agreeing with Notre Dame and Beacon Health that ERISA preempted FMS's claims. *FMS Nephrology Health Partners N. Cent. Ind. Dialysis Ctrs, LLC v. Meritain Health, Inc.*, 120 N.E.3d 1012, 1014 (Ind. Ct. App. 2019), trans. granted. The appellate court believed our opinion in *Midwest Security Life Insurance Co. v. Stroup*, 730 N.E.2d 163 (Ind. 2000), compelled the conclusion that FMS's claims were preempted. Analogizing to *Stroup*, the court found that "FMS's claims are based on an alleged failure to pay sums due for services covered by an

ERISA-regulated plan." *FMS Nephrology Partners*, 120 N.E.3d at 1020–21. Thus, the court concluded, FMS's claims were preempted because "the trial court would have had to refer to and interpret the Beacon and Notre Dame Plans to determine (1) whether proper payment had been rendered, and (2) if not, how much additional payment FMS was entitled to receive." *Id.* at 1021.

After the appellate court denied rehearing, FMS sought transfer, arguing that the court of appeals' opinion is at odds with *Stroup*, 730 N.E.2d 163, and puts Indiana out of step with settled ERISA case law from elsewhere. Having granted transfer, thus vacating the appellate decision, we vacate the trial court's judgment and remand.

## Discussion and Decision

At issue is whether FMS can proceed with its claims, all brought under state law, or whether ERISA preempts those claims. Two forms of ERISA preemption are before us: complete preemption and conflict preemption. The courts below determined that FMS's claims were foreclosed by ERISA's conflict-preemption provision. But we consider both that provision and the alternative ground—complete preemption—urged for affirming the trial court's judgment.

We begin with complete preemption. Despite its name, complete preemption is not about preemption but jurisdiction. It confers federal-question jurisdiction even for claims denominated as state-law claims. The Supreme Court has pronounced a two-prong test for complete preemption asking, first, whether the claim at some point could have been brought under ERISA's civil-enforcement scheme; and, second, whether the defendant's actions implicate any independent legal duty apart from ERISA. On this record, we hold that FMS's claims satisfy neither prong and thus are not completely preempted.

Then we address conflict (or express) preemption. We briefly discuss express preemption under the Supreme Court's general preemption jurisprudence, which looks to the plain text of the applicable preemption statute. Despite its literalism when interpreting most preemption statutes,

the Court continues to endorse an atextual, policy-driven test for ERISA preemption. This test asks whether a claim has either a "reference to" or a "connection with" an ERISA plan. Applying the test, we hold first that express preemption does not prevent a health-care provider from enforcing a separate contract against a plan. We also hold that a key factual dispute remains over whether the underlying claims were deemed covered under the defendant plans. If covered, then the claims would not be preempted. But if not covered, then preemption would apply. We conclude that the trial court erred in entering summary judgment for the Notre Dame and Beacon Health defendants because, on this record, they did not prove their entitlement to judgment as a matter of law.

## A. No complete preemption

Preemption is typically a federal defense to a plaintiff's substantive state-law claim. If the plaintiff's claim is preempted, federal law supplies the substantive rule of decision. But federal jurisdiction over an ERISA claim is not exclusive. Of relevance here, even where federal jurisdiction lies over an ERISA claim, state courts have concurrent jurisdiction over such claims. "State courts of competent jurisdiction and district courts of the United States shall have concurrent jurisdiction of actions under paragraphs (1)(B) and (7) of subsection (a) of this section [referring to ERISA Section 502(a)]." 29 U.S.C. § 1132(e)(1).

The term "complete preemption" is a misnomer. It is less a preemption doctrine than a jurisdictional rule. *Franciscan Skemp Healthcare, Inc. v. Cent. States Joint Bd. Health & Welfare Trust Fund*, 538 F.3d 594, 596 (7th Cir. 2008). Under complete ERISA preemption, even a claim denominated as a state-law claim, such as one alleging breach of contract, "arises under" federal law, see 28 U.S.C. § 1331, and thus can—but need not—be removed to federal court, *id*. § 1441(a); *Franciscan Skemp Healthcare, Inc.*, 538 F.3d at 596–97. In that sense, complete preemption is an exception to the federal well-pleaded-complaint rule, according to which the plaintiff is the master of its complaint, and so long as the face of the complaint does not affirmatively allege a federal claim, the plaintiff can remain in state court. But under ERISA's complete-preemption exception, a complaint

alleging only state-law claims will nevertheless be transformed from "an ordinary state common law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule." *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 65–67 (1987).

The Supreme Court first announced its doctrine of complete ERISA preemption in *Taylor*. The Court held that ERISA Section 502(a), 29 U.S.C. § 1132(a)(1)(B), reflects Congress's design to "so completely pre-empt a particular area that any civil complaint raising this select group of claims is necessarily federal in character." 481 U.S. at 63–64, 67. Section 502(a) authorizes an ERISA-plan participant or beneficiary to file suit "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan". 29 U.S.C. § 1132(a)(1)(B). If a state-law claim comes within the scope of this section, then the claim is completely preempted, and the only permissible claim is federal.

The Supreme Court applies a two-prong test for assessing whether an asserted state-law claim comes within the scope of ERISA Section 502(a)(1)(B). A state-law claim is completely preempted if (1) "an individual, at some point in time, could have brought [the] claim under" this section and (2) "there is no other independent legal duty that is implicated by [a] defendant's actions." *Aetna Health Inc. v. Davila*, 542 U.S. 200, 210 (2004). *Davila*'s two-prong test is phrased in the conjunctive, meaning the state-law claim is completely preempted only if both prongs are met. On this record, neither prong is satisfied.

## 1. *Davila*'s first prong—right to assert an ERISA-based claim

There is no complete preemption under the first *Davila* prong unless the plaintiff asserts what amounts to a claim under ERISA's civil-enforcement statute, even if labeled a state-law claim. A medical provider is not a plan participant or beneficiary, so it lacks standing to bring an ERISA claim directly. But with a valid assignment of rights, a provider can sue derivatively to enforce ERISA rights belonging to the assignor. Beacon Health, however, admits that its plans' documents prohibit any

assignment of rights, so FMS lacks standing to pursue claims even derivatively under ERISA Section 502(a). Thus, because FMS cannot pursue ERISA claims against Beacon Health directly or derivatively, its claims against Beacon Health are not completely preempted.

As for its claims against Notre Dame, FMS admits it received valid ERISA-based assignments from patients enrolled in the Notre Dame plans, which FMS initially pursued against Notre Dame, albeit unsuccessfully, under the plans' claims-administration process. FMS eventually abandoned these assigned claims by electing not to pursue them to completion under Section 502(a). According to Notre Dame, FMS's own actions show that these claims could have been pursued—and were pursued for a time—under the plans, thus establishing that the first *Davila* prong was satisfied as to FMS's claims against Notre Dame. That is true, as far as it goes. FMS's claims are, to be sure, completely preempted to the extent they are based on ERISA rights that Notre Dame plan participants assigned to FMS. But this argument ignores that FMS "holds two separate claims": not only its claim for benefits under ERISA but also its separate state-law claims. *Conn. State Dental Ass'n v. Anthem Health Plans, Inc.*, 591 F.3d 1337, 1347 (11th Cir. 2009) (citing *Franciscan Skemp Healthcare, Inc.*, 538 F.3d at 598). FMS has disclaimed suing for the ERISA benefits due employees under the Notre Dame plans. Instead, FMS is suing in its own capacity to recover damages from Notre Dame under multiple breach-of-contract theories or, alternatively, based on promissory estoppel. As the Fifth Circuit has observed, the crucial inquiry is whether the provider is "seeking benefits under the terms of the plan, or rights that derive from the independent basis of the contract." *Lone Star OB/GYN Assocs. v. Aetna Health Inc.*, 579 F.3d 525, 529 n.3 (5th Cir. 2009). Because FMS is pursuing state-law claims independent of any rights it may have received from the assignments, the first *Davila* prong is not satisfied as to Notre Dame either.

FMS's theory of this case reinforces our conclusion that its claims against Notre Dame are not completely preempted. In the analogous collective-bargaining context, the Supreme Court has held that a plaintiff may avoid preemption by pursuing exclusively state-law claims in lieu of other potentially preempted federal claims. In *Caterpillar Inc. v. Williams*,

482 U.S. 386 (1987), the plaintiffs faced a set of contracts governed by a collective-bargaining agreement and another set of individual employment contracts governed only by state law. The plaintiffs elected to sue only on the individual contracts. The Supreme Court rejected Caterpillar's attempt to remove the case to federal court on the basis that the plaintiffs' claims were founded on the collective-bargaining agreement and thus governed exclusively by federal law. "[The plaintiffs'] complaint is not substantially dependent upon interpretation of the collective-bargaining agreement." *Id. at* 395.

The same is true here. Like the plaintiffs in *Caterpillar*, FMS has limited its cause of action by asserting only state-law claims and has disclaimed any theory of recovery premised on an ERISA-based claim for benefits under the plans. Because FMS is suing in its own capacity for breach of contract and not asserting a derivative right to benefits under an ERISA plan, the Notre Dame and Beacon Health defendants fail to satisfy the first prong of *Davila*.

Our conclusion that the first *Davila* prong is not satisfied here means there is no complete preemption of FMS's claims because, as mentioned, *Davila*'s test is conjunctive, requiring that both prongs be met. Though unnecessary given our resolution of the first prong, we also address the second *Davila* prong for the sake of completeness.

## 2. *Davila*'s second prong—independent, non-ERISA-based duty

Under *Davila*'s second prong, a claim is not completely preempted if it seeks to enforce legal duties independent of those owed to an ERISA-plan participant or beneficiary. Under *Davila*, complete preemption requires, among other things, that there be "no other independent legal duty that is implicated by a defendant's actions". 542 U.S. at 210. In other words, if another, independent legal duty exists beyond what an ERISA plan imposes, then a claim based on a violation of that duty is not preempted. A clear example of an independent legal duty is one imposed by contract. Such contract- or other state-law-based claims withstand complete ERISA preemption because they rely on legal duties arising independently of

ERISA. Recall that FMS seeks damages based on its relationships with the Notre Dame and Beacon Health plans. Thus, FMS's state-law claims are premised not on ERISA but on the network agreements. These agreements are separate contracts with legal obligations independent of ERISA for both providers and health plans. Claims to enforce these agreements fail the second *Davila* prong and are not preempted.

Though not dispositive, we note that defendants Notre Dame and Beacon Health—the parties urging complete preemption here—never sought to remove this state-court action to federal court. Perhaps they recognized removal would have failed because federal jurisdiction is lacking. In other words, they knew (or suspected) a federal court would have reached the same conclusion had they tried to remove, so they took their chances by trying to persuade a state court instead. Whatever their reasons for not seeking removal, we hold that FMS's claims are not completely preempted under ERISA Section 502. Its claims truly are state-law claims under the federal well-pleaded-complaint rule and do not establish federal-question jurisdiction under Section 1331 of Title 28 of the United States Code.

We also note, as an aside, that pending before the trial court is a request for partial summary judgment, arguing that FMS lacks contractual privity with the defendants. Because both the trial court and court of appeals decided this case on preemption grounds alone, neither court addressed privity. On remand, the defendants may wish to reassert this lack-of-privity argument as an independent ground for summary judgment against FMS.

## B. No conflict preemption

### 1. General preemption principles

Next, we consider FMS's claims under ERISA's conflict-preemption provision. Unlike complete preemption, conflict (or express) preemption is not an independent basis for invoking a federal court's jurisdiction. With conflict preemption, the issue is which substantive law (federal or

state) governs the plaintiff's state-law claim, regardless of whether the plaintiff sued in a federal or state court.

The relevant statute is ERISA Section 514(a), which preempts "all State laws insofar as they … **relate to** any employee benefit plan" covered by ERISA. 29 U.S.C. § 1144(a) (emphasis added). The Supreme Court has cautioned against interpreting "relate to" literally; otherwise, nothing would escape preemption: "If 'relate to' were taken to extend to the furthest stretch of its indeterminacy, then for all practical purposes preemption would never run its course, for really, universally, relations stop nowhere". *N.Y. State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 655 (1995) (cleaned up).

The Supreme Court's early conflict-preemption cases applied Section 514's "relate to" test by treating the phrase as "deliberately expansive". *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 45–46 (1987). Later cases, however, took a more restrictive view. With its seminal decision in *Travelers*, the Supreme Court explained that it has "never assumed lightly that Congress has derogated state regulation" but instead has "addressed claims of pre-emption with the starting presumption that Congress does not intend to supplant state law." 514 U.S. at 654. More recently, though, the Supreme Court seems to have reverted to a broader view of express preemption.

In *Puerto Rico v. Franklin California Tax-Free Trust*, 136 S. Ct. 1938 (2016), a bankruptcy case, the Court held that federal bankruptcy law preempted Puerto Rico from enacting its own municipal scheme for restructuring the debt of its insolvent public-utility companies. In finding preemption, the Court looked solely to the "plain text" of the governing clause. "The plain text of the Bankruptcy Code begins and ends our analysis." *Id*. at 1946. According to the Court, the existence of an express preemption clause within the Code meant the clause applied as written. It also meant there was no presumption against preemption. "[B]ecause the statute contains an express preemption clause, we do not invoke any presumption against pre-emption but instead focus on the plain wording of the clause, which necessarily contains the best evidence of Congress' pre-emptive intent." *Id*. (cleaned up).

Despite the statement in *Franklin* that the Court's preemption analysis "begins and ends" with the clause's text, there is reason to think the Court continues to apply a different, atextual preemption standard in ERISA cases. Perhaps that is because, as the Court observed in *Travelers*, the plain meaning of ERISA's broad preemption clause would swallow nearly all state laws. Applying the clause literally—so that virtually no state law would escape preemption—is an outcome "no sensible person could have intended". *Cal. Div. of Labor Standards Enforcement. v. Dillingham Constr., N.A., Inc.*, 519 U.S. 316, 336 (1997) (Scalia, J., concurring). In its most recent ERISA preemption case, *Gobeille v. Liberty Mutual Insurance Co.*, 136 S. Ct. 936 (2016), the Court did not apply Section 514(a) literally but continued to identify factors for assessing preemption. "When considered together, these formulations [for describing preempted state laws] ensure that ERISA's express pre-emption clause receives the broad scope Congress intended while avoiding the clause's susceptibility to limitless application." *Id*. at 943. In other words, *Gobeille* eschewed a plain-meaning interpretation of Section 514(a) because of the clause's propensity to sweep seemingly without limit. That said, at least one Justice has voiced concern that the Court's interpretation of Section 514(a) "has become increasingly difficult to reconcile with our pre-emption jurisprudence." *Id*. at 948 (Thomas, J., concurring). According to Justice Thomas, the Court should no longer indulge a preemption jurisprudence under ERISA untethered to the statute's text, but instead should decide whether the statute unconstitutionally preempts too broad a swath of state laws. *Id*. at 948–49. For now, however, that seems to represent the view of only a single Justice.

Under *Gobeille*, the relevant preemption factors are those the Court has considered for some time. *Id*. at 943. To date, the Court has identified two categories of state laws that ERISA preempts: laws having a "reference to" and those having a "connection with" an ERISA plan. *Id*. As long ago as *Travelers*, the Court recognized the futility of analyzing issues of conflict preemption with such useless descriptions as "connection with" and "reference to". 514 U.S. at 656. That is why later decisions went "beyond the unhelpful text and the frustrating difficulty of defining its key term ['relate to']" and looked instead "to the objectives of the ERISA statute as a

guide to the scope of the state law that Congress understood would survive" preemption. *Id*. ERISA's objectives are to protect plan participants and their beneficiaries by, among other things, imposing disclosure and reporting requirements, holding fiduciaries to standards of conduct, providing appropriate remedies, and improving the equitable character and financial soundness of employee-benefit plans. 29 U.S.C. § 1001(b), (c). Given these statutory objectives, the Supreme Court observed that the point of conflict preemption is to ensure uniform national standards for administering ERISA-covered plans. "The basic thrust of [Section 514(a)] was to avoid a multiplicity of regulation in order to permit the nationally uniform administration of employee benefit plans." *Travelers*, 514 U.S. at 657. The Court later modified its inquiry from *Travelers* to emphasize that courts must consider not only ERISA's "objectives" but also the "nature of the effect of the state law on ERISA plans". *Dillingham*, 519 U.S. at 325. In other words, courts must look to such factors as whether state law is mandating plan terms or benefits, effectively regulating the plan, or providing an alternative enforcement mechanism to ERISA. See *Travelers*, 514 U.S. at 658.

These prior decisions have culminated in *Gobeille*'s "formulations" that "reference to" an ERISA plan means a state law will be preempted when it "acts immediately and exclusively upon" a plan or when the plan's existence "is essential to the [state] law's operation". 136 S. Ct. at 943 (quoting *Dillingham*, 519 U.S. at 325). And "connection with" an ERISA plan means a state law will be preempted when it "governs … a central matter of plan administration" or "interferes with nationally uniform plan administration", *id.* (quoting *Egelhoff v. Egelhoff*, 532 U.S. 141, 148 (2001)), or "force[s] an ERISA plan to adopt a certain scheme of substantive coverage or effectively restrict[s] its choice of insurers." *Id.* (quoting *Travelers*, 514 U.S. at 668).

## 2. Applying the general principles

### a. No preemption of claims to enforce separate contract against ERISA plans

We have previously held that ERISA expressly preempts claims concerning coverage under an ERISA-governed plan. The issue in such cases is whether there is a right to coverage under an ERISA plan. In *Stroup*, 730 N.E.2d 163, the plaintiffs were beneficiaries of an employee-benefit plan subject to ERISA who challenged the plan's denial of health-care coverage. We found it "clear" that the Stroups' state-law claims for breach of contract and the tort of bad faith were expressly preempted because the claims were based on the plan's "failure to pay benefits due under an ERISA-governed" plan. *Id*. at 166–67. These claims thus had a "connection with" the plan because they arose from the plan's "denial of coverage". *Id*. at 167.

FMS argues that the court of appeals misconstrued our precedent when it held that *Stroup* preempts claims against ERISA plans to enforce state-law-based obligations arising independent of the plans. We agree with FMS. *Stroup* is a narrow decision holding that ERISA preemption occurs when the "essence of the claims is a failure to supply benefits under the plan." *Id.* A claim challenging the denial of benefits necessarily requires interpretation of the plan documents to assess whether the plan's coverage decision was correct. And that is quintessentially the type of inquiry that ERISA Section 514 preempts. Our holding in *Stroup* is consistent with other courts concluding that ERISA expressly preempts claims about the scope of a plan's coverage. See, e.g., *Ray Klein, Inc. v. Bd. of Trs. of the Alaska Elec. Health & Welfare Fund*, 307 F. Supp. 3d 984, 991 (D. Alaska 2018) (finding express preemption because "what charges are covered under the Plan is at the heart of the dispute"). But neither *Stroup* nor *Ray Klein* purports to preempt the species of claim that FMS is asserting here, which is about neither a beneficiary's right to coverage under an ERISA plan nor a health-care provider's right to payment under a plan, but about a provider's rate of payment under a separate contract with a plan.

Here, the summary-judgment record is sufficiently complete and uncontroverted that we can make the following three observations about FMS's claims. First, FMS does not seek to dictate the terms governing its patients' benefit plans, to regulate such plans, or to create alternative grounds for enforcing ERISA's requirements against the plans. FMS's claims, even if successful, would not impose disparate requirements on the defendant plans, so there is no risk of undermining Congress's goal of a uniform national standard for administering ERISA plans. Second, FMS's claims do not concern the "areas with which ERISA is expressly concerned—reporting, disclosure, fiduciary responsibility, and the like." *Dillingham*, 519 U.S. at 330 (cleaned up). Third, FMS is not using its claims as a proxy for enforcing substantive rights conferred under ERISA. As explained above, FMS is a health-care provider with no substantive rights of its own under ERISA. And it has specifically disclaimed any derivative rights under ERISA it may have obtained by assignment from its patients. Instead, FMS seeks to vindicate only its contract-based rights against the Notre Dame and Beacon Health defendants and their third-party administrator arising under state law.

Despite these conclusions, however, two issues remain. The trial court held that even if the EOBs or other designated evidence established that FMS's claims were adjudicated as covered under the plans, the claims would still be preempted because the question of how much is owed or payable to FMS still requires "the application of, reference to and/or interpretation of the plan documents." And the court of appeals agreed: "[D]espite FMS's assertion to the contrary, the trial court would have had to refer to and interpret the Beacon and Notre Dame Plans to determine (1) whether proper payment had been rendered, and, (2) if not, how much additional payment FMS was entitled to receive." *FMS*, 120 N.E.3d at 1021. Yet in its transfer petition, FMS takes issue with this characterization: "The trial court will not be asked to reference the Plans' terms to determine the payment amount; the Plans contain no pricing terms and there is no interpretation left to be done for claims already adjudicated as covered."

The mere fact that a court may have to consider or consult the terms of an ERISA-governed plan while adjudicating a state-law claim does not

mean the claim is preempted. As the Seventh Circuit held in *Kolbe & Kolbe Health & Welfare Benefit Plan v. Medical College of Wisconsin, Inc.*, 657 F.3d 496 (7th Cir. 2011), there is no express preemption "merely because [a state-law claim] requires a cursory examination of ERISA plan provisions." *Id.* at 504 (citation omitted). There, the court held the plaintiff's claim was not preempted because resolving the breach-of-contract claims required interpreting "only the member or service agreements and the provider agreements". *Id.* at 504–05. See also *Blue Cross of Cal.. v. Anesthesia Care Assocs. Med. Grp., Inc.*, 187 F.3d 1045, 1053 (9th Cir. 1999) (finding no preemption because provider's claims "do not involve construction of the terms of ERISA-covered benefit plans").

### b. Summary judgment entered erroneously

The record does not establish why the Notre Dame and Beacon Health plans did not pay FMS's disputed claims. If the reason is that there is no right to payment under the plans, then the claims are expressly preempted. But to the extent a court must determine not whether a claim for services was covered but whether the plan paid less than the agreed provider rate for covered services based on an agreement separate from the plan, then the claim is not preempted. Based on our review of the EOBs and the other evidence designated on summary judgment, we cannot tell how these disputed claims were adjudicated under the plans. Given these disputes of material fact over whether FMS's claims were denied based on the terms of the plans, we conclude that the trial court erred in entering summary judgment on this basis.

As mentioned, FMS argues that Meritain, as third-party administrator issuing the EOBs, determined that FMS's disputed claims were covered under the defendants' ERISA plans, and that the plans failed to pay the negotiated amounts the parties had agreed FMS would receive for its services. Thus, according to FMS, its legal claims are based not on the plans themselves but on its separate agreements with the plans. FMS says the Court need only examine the EOBs to see whether the plans paid the negotiated rates for covered medical services. FMS says a plain reading of

its designated EOBs shows that the claims were covered, including the claims that are entirely subject to the "Provider Discount".

In contrast, both Notre Dame and Beacon Health dispute that FMS's claims were deemed to be covered under their respective plans. They say they rejected FMS's claims based on the plan documents. Notre Dame argues, for example, that certain claims were denied for lack of medical necessity and bundling issues. To support its argument, Notre Dame submitted certain EOBs that show the denial of some claims. But many of the Notre Dame EOBs were issued for different dates of service than the ones FMS offered to support its breach-of-contract claim. And we note that if there is an adverse benefit determination, ERISA's claims-processing regulation requires that the "specific reason or reasons for the adverse determination" be provided, as well as "[r]eference to the specific plan provisions on which the determination is based". See 29 C.F.R. § 2650.503-1(g)(1)(i), (ii). Yet neither Notre Dame's nor FMS's designated EOBs provide specific reasons for adverse determinations or reference specific plan provisions. We hold that Notre Dame did not sustain its burden of affirmatively proving that FMS is challenging determinations of no coverage under the plans.

And, for its part, Beacon Health argues that it denied certain claims because they were not "clean claims", designating the affidavit of Annette Vota to support its argument. In her affidavit, Vota stated that "[t]he claims submitted by [FMS], which [FMS] asserts where [sic] not paid, were not 'clean claims' and not entitled to payment", and that FMS "has been paid in full for all clean claims, as well as for all covered claims." But Beacon Health's clean-claim argument fails on its own terms. Beacon Health's network contract defines a clean claim as one "submitted by a provider for payment with no defect, impropriety, or particular circumstance requiring special treatment preventing payment. Basically, when the payor has received all information required to determine liability under the terms of the policy the claim is clean." By issuing EOBs on Beacon Health's behalf, Meritain was able to determine liability under the policy's terms—meaning FMS's claims were clean. Additionally, just as with the Notre Dame EOBs, those designated by Beacon Health likewise did not meet the requirements of adverse benefit determinations

under ERISA's claims-processing regulation. See 29 C.F.R. § 2650.503-1(g)(1)(i), (ii). For both reasons, we find that Beacon Health has failed to show there were adverse benefit determinations under its plans for FMS's disputed medical services.

We refer to the Code of Federal Regulations not to suggest that Notre Dame or Beacon Health necessarily violated notice requirements imposed under federal law. Instead, we note the absence of such evidence only to underscore our uncertainty over whether FMS's claims were indeed adjudicated as not covered under the plans, as Notre Dame and Beacon Health maintain.

\*       \*       \*

Summary judgment was improper because the Notre Dame and Beacon Health defendants did not establish as a matter of law that FMS's claims "enter[] a fundamental area of ERISA regulation", *Gobeille*, 136 S. Ct. at 946, or that its claims are "substantially dependent upon interpretation" of the defendants' plan documents, *Caterpillar*, 482 U.S. at 395. Specifically, these defendants did not establish either (1) that FMS's claims were adjudicated as covered under the defendants' plans or (2) that a court would have to consult the various plans' documents to determine whether FMS was underpaid and, if so, by how much.

# Conclusion

For these reasons, we grant transfer, vacate the trial court's entry of judgment in favor of the Notre Dame and Beacon Health defendants and against FMS, and remand for further proceedings not inconsistent with this opinion.

Rush, C.J., and Massa and Goff, JJ., concur.
David, J., concurs in result.

ATTORNEYS FOR APPELLANT FMS NEPHROLOGY PARTNERS
NORTH CENTRAL INDIANA DIALYSIS CENTERS, LLC

Bryan H. Babb
Bradley Dick
Bose McKinney & Evans LLP
Indianapolis, IN

Caroline Turner English
Brian D. Schneider
Emily Baver Slavin
Arent Fox LLP
Washington, D.C.

ATTORNEYS FOR APPELLEES BEACON HEALTH SYSTEM, INC;
BEACON HEALTH SYSTEM GROUP BENEFIT PLAN; BEACON
HEALTH SYSTEM GROUP BENEFIT PLAN-UNION PLAN

Richard B. Urda, Jr.
Urda Professional Corporation
South Bend, IN

Joseph L. Amaral
R. William Jonas
Hammerschmidt, Amaral & Jonas
South Bend, IN

ATTORNEYS FOR APPELLEES UNIVERSITY OF NOTRE DAME DU
LAC; UNIVERSITY OF NOTRE DAME CHA HMO PLAN
(MEDICAL); UNIVERSITY OF NOTRE DAME SELECT HMO PLAN
(MEDICAL); UNIVERSITY OF NOTRE DAME PPO PLAN
(MEDICAL)

Brian E. Casey
Kelly J. Hartzler
Alice J. Springer
Barnes & Thornburg LLP
South Bend, IN